Eugene F. Farley, Administrator, *vs.* The New York, New Haven and Hartford Railroad Company.

Third Judicial District, New Haven, June Term, 1914.
Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

The Employers Liability Act of Congress does not abolish the defense of the assumption of risk, in actions thereunder, except in cases where the violation by the carrier of some Federal statute enacted for the safety of the employee has contributed to his injury or death.

A steam-locomotive engineer employed for many years by the defendant, while running a freight-train was killed as he was climbing from the rear of his tender, where he had gone to inspect the water in the tank, by coming in contact with, or in close proximity to, a highly charged overhead electric wire used to supply power for the movement of passenger-trains. The decedent was an experienced hand, familiar with the location of bridges over the railroad tracks, knew that the electric wires were gradually depressed to pass under them, and that it was extremely dangerous for one to come within fourteen inches of these wires; and furthermore he had received notice and warnings to this effect from the railroad company, and had certified upon a blank form provided for that purpose that he had carefully read at least one of such warnings. The original situation remained unchanged and the attendant risk had not been enhanced by any new act of the defendant which could possibly be imputed to it as negligence. *Held* that under these circumstances the decedent certainly knew and comprehended the danger involved, that by voluntarily continuing in his employment he had assumed the risk incident thereto, and therefore that his administrator could not recover damages for his death.

Argued June 2d—decided July 13th, 1914.

Action to recover damages for personal injuries resulting in the instantaneous death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Bennett, J.;* upon its motion a verdict was rendered for the defend-

ant, and from the judgment thereon the plaintiff appealed. *No error.*

This case was formerly before this court as reported in 87 Conn. 328, 87 Atl. 990. The undisputed evidence established the following facts: September 28th, 1911, the plaintiff's intestate, John H. Bottomley, met his death while engaged in his employment as a locomotive engineer, and while in charge of a locomotive engine hauling an interstate freight-train between Stamford, in this State, and New York City. The train was proceeding westward at the time, and approaching an overhead highway bridge in Larchmont, New York, known as the Weaver Street bridge. At the time of the accident he had passed from the cab over the top of the tender and the coal therein to ascertain the amount of water in the tank by looking through a manhole at the rear end of the tender used for the purpose of filling the tank, and was returning, when, coming into contact with or close proximity to the running wire, he was instantly killed by the electric current. This wire was suspended along and over the middle line of the track upon which the train was traveling. It was used for the operation of trains by electricity, and was charged with a current of high voltage, dangerous to the life of a person who should receive it.

Prior to July, 1907, the defendant's line between Stamford and New York City had been operated solely by steam power. At that time its equipment for operation electrically had been completed, and the running of passenger-trains by electricity was then begun, and has since been continued. Freight-trains continued to be hauled by steam locomotives. The method employed for electrical operation was that known as the overhead system. The equipment required for this method, and that installed, consisted in part of steel structures by the side of and across the tracks for the

support of wires running along the middle lines of the several pairs of rails. Two of these were messenger wires, so-called. They were hung somewhat higher than the third, which was the running or feed wire from which the current was taken.

The running wire, when suspended at the standard height, was about twenty-two and one half feet above the level of the top of the rails. To enable these wires to be carried under overhead bridges it was necessary to depress them as the bridge was approached. This depression was gradual. At the Weaver Street bridge the wires, to pass under it, were brought down to within fifteen feet four and one half inches of the top of the rails. Between Stamford and Larchmont, a distance of about fifteen miles, there were fifteen overhead bridges. The height of the wires passing under them varied from fifteen feet four and one half inches to eighteen feet four and one quarter inches. In the case of only three was it more than seventeen feet, and of seven it was between fifteen and sixteen feet only.

The locomotive which the deceased was using was one of medium size, and of a type which had been in use upon the line for thirty-five years. The tenders attached to this type of engine varied in height from ten and one half to thirteen feet. The height of the one in use was not shown. Accessible to the engineer in his cab was a tank cock at a level of eighteen inches above the bottom of the tank, by means of which it could be determined that the water in the tank had not fallen below that level, leaving water enough to run several miles. The tank had been filled at Stamford. There was a water-plug a short distance beyond the Weaver Street bridge, and others two, and five and one half, miles further on. There was no evidence as to the actual depth of water in the tank.

Bottomley entered the defendant's service as a fire-

man prior to July 7th, 1907, and had thereafter continued in the employ of the company, until his death, either as fireman or as engineer. The major portion of this service was on the New York division, operating through the electric zone between Stamford and New York City. During the six months immediately prior to his death he had, as engineer, made at least forty-nine trips through this zone and past the Weaver Street bridge, the most of them being in the day time.

The time-tables furnished Bottomley, and receipted for by him, contained a notice to all trainmen that within the electric zone in question there was danger within fourteen inches of the wires, and a warning to be cautious and keep at least that distance away from them. A special written notice and warning to the same effect was also delivered to him, with the requirement that he carefully read it and certify that he had done so upon a blank prepared for that purpose. This certificate, which he signed, restated the substance of the notice and warning, and recited that he was warned "to use the utmost care to look out for all such wires."

*Charles S. Hamilton* and *Edward P. O'Meara*, for the appellant (plaintiff).

*Thomas M. Steele*, with whom was *Harrison T. Sheldon*, for the appellee (defendant).

PRENTICE, C. J. The court assigned two reasons for its direction of a verdict for the defendant, to wit: (1) That the plaintiff had failed to present evidence from which the jury could reasonably have found that the defendant was guilty of negligence in the premises; and (2) that the evidence in support of the defense of assumption of risk was such that it could not reasonably have been found that the risk was not assumed by the

intestate's continuing in his employment with full knowledge and comprehension of it. The last of these reasons is so clearly sound and sufficient that we have no occasion to inquire into the other.

The Federal Employers Liability Act (35 U. S. Stat. at Large, 65) under which this action was brought, did not abolish the defense of the assumption of risk, save in cases where the violation by the carrier of some Federal statute, enacted for the safety of employees, contributed to the injury or death of the employee. *Seaboard Air Line Railway* v. *Horton*, 233 U. S. 492, 503, 34 Sup. Ct. Rep. 635.

As bearing upon the question of the intestate's assumption of the risk which caused his death, the pertinent facts lie outside of the realm of dispute or uncertainty. They show that Bottomley had full knowledge of all the physical factors in the situation. As an engineer, he was familiar with engines and tenders and their proportions. The engine he was driving was one of moderate size, and of a type long in use. Its tender, whether of the larger or smaller size, was one in use with this type of engine. It was neither special nor unusual. In his years of experience, for the most part confined to this section of the road, and his recent months of frequent service upon it as engineer, he must have become acquainted with the existence of the many overhead bridges which here span the tracks, with the narrow space between bridges and tops of engine and tender, and with the manner in which the electric service wires were strung in carrying them under the bridges. These conditions were apparent to casual observation; they had remained unchanged for years; and they were closely related to the performance of his duties.

He must also have known that these wires were electrically charged for the operation of trains. As a locomotive engineer of experience, living in this age of the

world, he, untold and unwarned, must have been sufficiently intelligent and informed to know of the latent danger which lurked in the wires so charged to one who should come into contact with them or into their immediate vicinity, and of the extremity of that danger. But that matter aside, the knowledge of the danger had been so directly and forcibly brought home to him through the notices and warnings given to him by the defendant, that he could not have failed both to know the danger to his life that there would be in permitting himself to come into contact with or near to one of the wires, and to comprehend the character and extent of that danger.

This being so, he certainly knew and comprehended the risk incident to his employment. No one could well be expected to have better knowledge or a more adequate appreciation. Possessed of this knowledge and appreciation, he had for years chosen to continue in his employment. By so doing he assumed its risk, which, during these years, had remained unchanged, and been unenhanced by any new act of the defendant which could by possibility be imputed to it as negligence. *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 273, 79 Atl. 673.

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty." *Seaboard Air Line Railway* v. *Horton*, 233 U. S. 492, 504, 34 Sup. Ct. Rep. 635.

There is no error.

In this opinion the other judges concurred.