## 8912

## BRAMLETT v. SOUTHERN RAILWAY CO.

### (82 S. E. 501.)

MASTER AND SERVANT. FEDERAL EMPLOYERS' LIABILITY ACT. FEDERAL SAFETY APPLIANCE ACT. CHARGE. ASSUMPTION OF RISKS.

1. Where a switchman jumped at a footboard on the tender of an engine, missed his footing because of the defective condition of the board, and was thrown down and injured, and during the trial defendant's counsel referred to the board as a "footboard" and "running board" interchangeably, he was not entitled to a ruling that the accident was not within the Federal Employers' Liability Act, because such act forbids the use of defective "running boards" and that the board in question was not a running board, but a footboard.

2. Where a switchman was injured while making up an interstate train, his right to recover depended on the Federal Employers' Liability Act, which superseded all provisions of the State Constitution relating to assumed risk.

3. Where, in an action for injuries to a switchman in making up an interstate train, the Court adjudged that the Federal Employers' Liability Act alone governed the case and that in the particulars mentioned in the statute assumed risk was no defense, remarks of the Court concerning the general law of assumed risk were not erroneous, as, in effect, adjudging that the defense of assumed risk was eliminated whether the defect causing the injury was a violation of the federal act or not.

4. Where plaintiff, a railroad switchman, while making up an interstate train, jumped at a defective board on the tender of the engine, missed his footing, and was injured, whether the board was a "running board" within the Federal Employers' Liability Act forbidding the use of defective "running boards," was for the jury.

Before RICE, J., Greenville, November, 1913.    Affirmed.

Action by A. B. Bramlett against Southern Railway Company. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion. .

The following requests to charge were submitted to the Court, and were read and referred to in the charge below set out:

Plaintiff's requests to·charge:

I. "I charge you that under the acts of Congress, if you find that the plaintiff was employed by the defendant in car-

rying on interstate commerce, and if the plaintiff was injured while so engaged by the defendant on carrying on interstate commerce, and if such injury resulted in whole or in part from the negligence of any of the officers, agents or employees of the defendant, or if such injury resulted by reason of any defect or insufficiency in the appliance furnished by the defendant as charged, and if such defect or insufficiency was due to the negligence of the defendant, then plaintiff would be entitled to recover damages against the defendant in this action, and the defense commonly known as the fellow servant doctrine would not avail to relieve the defendant from liability to the plaintiff; and, if under the circumstances herein stated, the jury find that the plaintiff was guilty of any negligence on his part which contributed to the injury as a proximate cause thereof, without which the same would not have happened, such contributory negligence would not constitute a defense, and would not relieve the defendant from liability to the plaintiff, but would only operate to diminish the damages in proportion to the amount of negligence attributable to the plaintiff.

II. "If the jury find that there was any defect or insufficiency in the appliance furnished by the defendant to the plaintiff as charged, and if the plaintiff was at the time employed by the defendant while engaged in carrying on interstate commerce, then I charge you that under the acts of Congress no contributory negligence on the part of the plaintiff, and no assumption of risk on the part of the plaintiff would operate to relieve the defendant of liability to the plaintiff, as the acts of Congress expressly declare that if injury result to an employee by reason of the negligence of the carrier engaged in interstate commerce in furnishing defective or insufficient appliances, then in the case of injury to an employee by reason of such defective or insufficient appliances, negligently furnished, the carrier will not be excused from liability and from damages by reason of any

contributory negligence or any assumption of risk on the part of the employee.

III. "Under the Constitution of the State of South Carolina, if the plaintiff was injured by reason of the negligence of a person having a right to control or direct the services of the plaintiff, defendant would not be excused from liability by reason of the doctrine of fellow servant. And, further, under said Constitution of South Carolina, if the plaintiff was injured by reason of any defective or unsafe appliance furnished him, knowledge of such defective or unsafe condition of the appliance would not be a defense to this action, as to the plaintiff, unless the jury should find that the plaintiff were an engineer or a conductor and operating cars or a locomotive voluntarily.

IV. "If the jury find that what the testimony refers to as the 'footboard' is a 'running board,' and if such running board or footboard was defective and insufficient by reason of defendant's negligence, and if such condition of the footboard contributed to plaintiff's injury, then, in such case, no contributory negligence or assumption of risk by plaintiff can constitute any defense.

"See sec. 2 of Safety Appliance Act of 1910."

The defendant's requests to charge:

I. "A master is not an insurer of the absolute safety of his appliances under all circumstances. All that the law requires of him is to make and keep them reasonably safe with reference to the ordinary and expected use thereof. If an appliance is shown to have been unsafe only by reason of the unusual, unexpected and negligent use of it by an employee, the master cannot be charged with a breach of his duty in respect thereto.

II. "Even if the jury should conclude from the evidence that the footboard was worn and beveled on the edge and that the supports were bent so as to incline the footboard from a horizontal position, still if they conclude from the

21—98

evidence that it was nevertheless reasonably safe for the ordinary and expected use of it by employees, and that it is shown to have been unsafe only by reason of the unusual, unexpected and negligent use of it by the plaintiff, the railroad company cannot be charged with a breach of its duty in having said footboard in the condition described.

III. "If the jury believe from the evidence that the plaintiff was directed or undertook to throw the switch after the engine had passed on to the main line to back up to the rear of train 36 for the purpose of detaching the diner, and that he knew of such contemplated movement of the switch engine and the purpose thereof, it was his duty to exercise ordinary care to protect himself from injury by such movement of the engine.

IV. "The specific acts of negligence charged in the complaint are not breaches of any federal statutory duties (and for that reason the defendant is entitled to the full measure of the defense of assumption of risk, if made out to your satisfaction).

V. "An employee is held to assume the ordinary dangers of the occupation in which he is engaged, and also those risks and dangers which are known or so plainly observable that he may be presumed to know of them.

VI. "If the jury believe from the evidence that the plaintiff's injury was due to the risks of his employment assumed by him, I charge you that the plaintiff is not entitled to recover a verdict for any amount.

VII. "This action is to be determined by the provisions of the Employers' Liability Act of Congress, which supersedes all State regulations of the subject.

VIII. "If the jury believe from the evidence that the plaintiff himself selected the course of action which led to his receiving the injury complained of, he must be regarded as having taken upon himself the responsibility for any personal harm which he may suffer as a proximate cause of the selection thus made.

IX. "If the jury believe from the evidence that the plaintiff of his own accord stood between the rails and attempted to mount the step as the engine approached him; that such a course was not the ordinary or expected course under the circumstances; that such course was contrary to the rules of the company; and that his injury was the proximate result of such adopted course; the plaintiff is held to have assumed the risk of injury, even though it may be proved that the step was worn, and beveled and the irons supporting it bent to such an extent as to make it unsafe to mount the step under those circumstances.

X. "This action being maintained under the Federal Employers' Liability Act, I charge you that since Congress has legislated upon the subject and since the act recognizes the defense of assumption of risk except where the injury results from the breach of some duty imposed by federal statute, the plaintiff cannot invoke the provisions of the Constitution of South Carolina to the effect that knowledge of any defect in machinery, ways and appliances shall be no defense; but the defendant has the right to invoke such defense in every respect except in the instances referred to, which do not exist in this case.

XI. "Whatever in the Constitution of South Carolina which militates against the defense of assumption of risk is superseded by the Employers' Liability Act of Congress."

The Judge charged the jury as follows:

"Now, Mr. Foreman and gentlemen, this case comes up to you for final determination. The plaintiff must make out his case by the preponderance or greater weight of the evidence. That is the rule. He comes into Court and alleges certain things and he bases his case upon his allegations. He asks damages.

"Now, then, the defendant comes into Court and denies it. Then the burden is upon the plaintiff to make out his case by the preponderance or greater weight of the evidence.

Now, by preponderance or greater weight of testimony, is not meant, Mr. Foreman and gentlemen, the greater number of witnesses testifying to one particular fact or state of facts. I mean, not necessarily the greater number of witnesses, but it is the weight that you attach to what those witnesses say. It is your privilege to believe what one witness says, if you see fit to do so, and not believe what a dozen other witnesses say when those dozen other witnesses flatly contradict the one witness. It is the weight that you attach to what the witnesses say. Because what you are here to find out, Mr. Foreman and gentlemen, is to find the truth, is to get at the truth, and if you believe that one witness swears the truth and that a dozen other witnesses are not swearing the truth, then it is your right and privilege to believe that one witness.

Now, Mr. Foreman and gentlemen, this plaintiff, Bramlett, comes into Court in this case and says that on the morning of January 20th, 1912, that he was then in the employ of the defendant, the Southern Railway Company, as a brakeman, working on the yards at Greenville, and while engaged in his duties as a brakeman on the yards here in Greenville that he was run over by the tender which was operated by the servants, agents and employees of the Southern Railroad Company, and that he was injured, and that this injury was received through the carelessness and negligence of the defendant, acting through its servants, agents and employees.

"Now, then, Mr. Foreman and gentlemen, the particular allegations of negligence and carelessness which he sets up here—and if he recovers he must recover on these allegations, because he cannot go outside of what he alleges in his complaint to bolster up his case or to make out his case. Whatever he charges in the complaint must constitute the basis of his action and he must stand or fall by those allegations.

"He says that plaintiff, that is, Bramlett, sustained his injury by reason of the negligence, carelessness and recklessness of the defendant in starting said engine or locomotive suddenly backwards without any signal from the plaintiff. He says that he was back of the engine and tender, and that it was carelessness, negligence and recklessness in the engineer in starting it backwards towards him without any signal from him and without giving any notice to the plaintiff that said locomotive was about to be moved. Then, he says further, in starting said locomotive suddenly and so swiftly and in negligently, carelessly and recklessly failing to furnish plaintiff with a safe and suitable place and appliance with which to do the work, to wit, a footboard, which was badly worn and beveled on the edge, with a broken backstop supported by irons or stirrups, which had become bent so as not to be horizontal with the ground; and that by reason of the carelessness, negligence and recklessness of the defendant in these particulars which he has pointed out to you and which I have just read to you, plaintiff has been mutilated for life and deprived of one of his feet, has suffered great pain and anguish, his earning capacity has been greatly reduced, and for this he claims damages in the sum of fifteen thousand dollars.

"Now, Mr. Foreman and gentlemen, I haven't gone over all this complaint and stated it to you exactly, but just roughly I have indicated the plaintiff's contention, and that there may be no misunderstanding about what he claims, why you will have the complaint with you, and I want you to read it over. You have heard the evidence and by reading it over, why you will get his full complaint.

"Now, Mr. Foreman and gentlemen, the action, as you will notice, is based on negligence. Now, whenever a plaintiff comes into Court and bases his action upon negligence, there are certain things he must prove.

"The first is a duty due and owing to the plaintiff by the defendant to protect him from the injury complained of.

That is, the injury that he suffered at that time. That there was a duty owing at that time by the defendant to protect him from the injury.

"The second is, a failure to perform that duty.

"And the third is, that by reason of that failure to perform that duty he was injured.

"Now those are the three things necessary to make up a case where negligence is charged.

"Now, what is negligence? Well, ordinarily, we say it is carelessness, but we have had numerous definitions of it by the Courts, and I will have to try to give you those definitions. It is the want of ordinary care. It is the want of due care.

"Well, now, what is due care? Due care is that want of care which a man of ordinary care and prudence would have exercised under a given state of facts. Or negligence, we might say, is this: It is failing to do that which under a given state of circumstances a man of ordinary care and prudence would have done, or the doing of something, some act, which a man of ordinary care and prudence under the circumstances would not have done. What might be negligence under one state of facts, Mr. Foreman and gentlemen, as you can readily see, under an entirely different state of facts would not be negligence. It all depends upon the surrounding circumstances at the time the act is done.

"As I have said once or twice before, a man could go out in the country where there is no probability of a person being in sight, and he has a good level road and a fine automobile, he might run sixty miles an hour and it wouldn't be negligence. But let him go through the streets of Greenville at sixty miles an hour and that would be a different proposition. The circumstances surrounding the case would be entirely different. Therefore, when we come to speak of the question of negligence we always take into consideration the circumstances surrounding the doing of the act.

"Now, Mr. Foreman and gentlemen, this action—the action in this case is brought under what is commonly called

the Employers' Liability Act. That is, it is a federal statute, an act passed by Congress, and the plaintiff must stand or fall under the provisions of that act. If he makes out his case under that act, then he is entitled to recover. If he fails to make out his case under that act, then he is not entitled to recover.

"Now the complaint, Mr. Foreman and gentlemen, is that this engine and tender was engaged in interstate commerce, or engaged in making up a train which had to pass through one State into another State. And, as I understand from counsel, there is no contention about that. That the work that he was engaged in was interstate commerce, and, therefore, he has brought his action under this act of Congress commonly known as the Employers' Liability Act. And he must make out his case under that act, or he must fail to do so.

"Now, without going into the whole of the act, I want to read a part of it here to you.

"This is an act of 1908. You heard it discussed yesterday at great length.

" 'Every common carrier by railroad engaged in commerce between several States and Territories, or between any States and territories, or between the District of Columbia and any of the States and Territories, and so forth, shall be liable in damages to any person suffering injury while he. is employed by such carrier of such commerce.'

"(Reading same further.)

"Now this action is brought under this act of 1908, and they charge negligence here in the particulars which I have read. And in addition to the particulars which I have read to you, you will find in this complaint that they charge defective appliances and an unsafe place in which to work.

"Now, Mr. Foreman and gentlemen, the master is bound to furnish his servant a safe place in which to do his work, and, further, to furnish him safe appliances with which to do his work. Now, when I say a safe place in which to work, I don't mean that it must be an absolutely safe place,

but reasonably safe, having regards to the kind of work he is engaged in. Because there are some kinds of work, Mr. Foreman and gentlemen, that in the very nature of itself is a dangerous piece of work to do. Now, the master must furnish a reasonably safe place in which his servant is to work, considering the nature of the work which he is to do. Further, he must furnish reasonably safe appliances with which to do the work. That doesn't mean that it must be an absolutely safe appliance or appliances, because there are contingencies in every kind of work which no human foresight can guard against. In such case the master is not liable, if he has furnished a reasonably safe place to work and reasonably safe appliances with which to work.

"Now, when the master has done these things, Mr. Foreman and gentlemen, then it is the duty of the servant to use ordinary care in doing his work and ordinary care in using the reasonably safe appliances furnished him by the master. The law lays that upon the servant.

"Now, Mr. Foreman and gentlemen, under our State laws and the decisions of our Supreme Court up to this time —in fact, under the common law, there is something vague and indefinite that you never understand. I don't know that we lawyers understand it entirely, but it is the law which has been recognized for hundreds and hundreds of years by England and in this country. And the common law is of force in this State.

"Under the common law, where a servant was injured through the carelessness or negligence of a fellow servant, then he could not recover, but this act of Congress changes that. As you probably heard me read, it says this:

" 'If it results in whole, or in part, from the negligence of any of the officers, agents or employees of such carrier.'

"Therefore, it don't make any difference whether he was a fellow servant or not. If he is injured, why he can recover under this act. He is not cut out. But the act says this:

" 'That the fact that the servant may have been guilty of contributory negligence shall not bar a recovery.'

"Now in this State, Mr. Foreman and gentlemen—I mean under our statute law—that if the contributory negligence of the servant, or the person injured, was the proximate cause of his injuries, then he cannot recover. That is the law in this State, but under the federal act that thing has been changed, so that his contributory negligence doesn't defeat his recovery.

"Now, when I say proximate cause, I don't think that in this case it is necessary for me to go very extensively into that. It means the direct cause, the immediate cause. But in this case here, under the federal statute, it says this:

" 'The jury must diminish the amount of damages which he has received in direct proportion to the degree of negligence which they find him guilty of.'

"Now, to try to illustrate that. Suppose that he wasn't negligent at all, and you would find that he would be entitled to recover a certain amount. Now, then, suppose you say, well, I believe that two-thirds of that thing was due to his own negligence. In other words, a third of it was his negligence. Then you cut that amount two-thirds, because the act says he is charged with that much of that amount on account of his negligence. Or, suppose you found that, well, now, if he wasn't negligent at all, and it was due entirely to the negligence of the defendant, he would be entitled to a certain amount, but we believe that one-half of his trouble was caused by his negligence. In other words, we find that one-half of his negligence went to make up the whole trouble, then you would cut down that amount by one-half.

"Now, Mr. Foreman and gentlemen, the rest of what I have to say to you is covered by these requests to charge, and I don't like to repeat too much, so I am going to charge you these requests and explain them to you and give you the rest of the law.

"Well, there has been a great deal of disagreement about the law of this case, and it is not unusual or unexpected. These are new acts, passed in 1908, and the Courts haven't yet had time to pass upon every phase of the act and hammer it out, and say this is the law about this thing and that is the law. So the lawyers differ, as would naturally be expected, as to the force and effect of this act of 1908. And, as it' very often happens, I can't agree in toto with either one of the attorneys in this case.

"The plaintiff asks me to charge you this (reading requests):

I. "Well that is good law. I have practically charged you that already.

"And right here, Mr. Foreman and gentlemen, I want to say this, that if there is no negligence shown on the part of the defendant whatsoever, then that relieves the defendant entirely, because the basis of this action is negligence. If the defendant was only negligent to a small degree and the greater portion of the trouble or negligence was due to the plaintiff, then you must reduce the verdict accordingly. In other words, you must divide it up between them in proportion, the responsibility that rests on each party.

II. "You remember, gentlemen, that assumption of risk was argued pro and con here yesterday by the attorneys. I charge you that. That is good law.

III. "Now, gentlemen, the third request—I refuse that. My view of this case is that the act of Congress covers the whole subject to the exclusion of any State laws, whether it is constitutional or statutory, and, further than that, it does cover the whole of it. Therefore, this third request to charge I refuse. I may be wrong in my construction of this act. If I am, I certainly hope, gentlemen, you will take it up to the Supreme Court and make it straight.

IV. "Well, I charge you that, Mr. Foreman and gentlemen. What is known as the Safety Appliance Act of Congress requires the railway company to furnish their cars with safe running boards, and it is for you to determine

whether or not the footboard mentioned in this complaint—
you have heard the evidence on that—is the same as what is
known as the running board on a car. And I charge you,
Mr. Foreman and gentlemen, that the word car as used there
would apply to a tender also. And then, it is for you to
determine as to whether or not under the evidence the run-
ning board mentioned is the same as footboard mentioned in
this complaint. If you find that it is, then there is a further
provision in this act: *Provided,* That no such employee who
may be injured or killed shall be deemed to have been guilty
of contributory negligence in any case where the violation
by such common carrier or any such negligence for the
safety of employees contributed to the injury or death of
such employee.

"That is to say, that where one of these safety appliance
acts has been violated by the railway company, then the
railway company cannot set up any contributory negligence
on the part of the employee who might be injured or killed.

"Now the railroad company is not allowed to set that up
as a defense to that extent, whereas, in the other act I have
read, it can set it up at least in mitigation of damages.
That is the damages as I said awhile ago.

"Now, gentlemen, I will try to get along with this and
turn it over to you, because I know you are getting worried.
But you and I are bound to be as patient as we can in trying
this case and to do the best we can.

"Now, the defendant requests these charges:

I. "That is good law, Mr. Foreman and gentlemen. I
have charged you that already. I charge you that again.

II. "Well, I charge you that, Mr. Foreman and gentle-
men. It is practically repeating over to you again what I
said, that it must be reasonably safe. Now, whether or not
it was used in an unusual, unexpected and negligent manner
is a question which you are to determine. And don't under-
stand by my charging you this that I am intimating that any
such thing took place, because those are absolutely—those
are questions absolutely for you.

III. "I charge you that. There ain't any question about that.

IV. "Now, Mr. Foreman and gentlemen, I cannot charge you that. But if you determine that the running board mentioned in the Safety Appliance Act, which I have been talking about to you, is the same thing as the footboard mentioned in this complaint, then they are charged with a breach of the federal statutory duty. But if you find that the running board, what is known as the running board on a car, and this footboard are not the same thing, but mean different things, then, Mr. Foreman and gentlemen, they are not charged in that case with any federal statutory duty.

V. "I charge you that.

VI. "Now, I charge you that, with this modification: If you find that it was due solely to the risks of his employment, the ordinary risks of his employment, then he cannot recover.

VII. "I think that is good law. I charge you that.

VIII. "Now I refuse to charge you that, Mr. Foreman and gentlemen. It is for you to say whether he was guilty of negligence, and whether or not his course of action was in the line of his duty.

IX. "Well, I refuse to charge you that.

"Now, Mr. Foreman and gentlemen, whether or not he was in between those two rails is a question for you, and what he was doing there at the time, whether he was in the discharge of his duties, is a question for you to determine. Whether or not he was trying to step upon that step to try to save himself from being run over is a question for you to determine, and whether or not he was discharging his duties at the time is a question for you to determine. And I am not going to undertake to say whether or not that was such negligence as would defeat entirely his recovery. Because, you have heard the position he was in, the testimony on both sides as to what he was doing, and I am going to leave that entirely to you to determine.

X. "I refuse that.

"Now, gentlemen, to explain what I think about that. As I said at the start, I think this act covers the whole thing.

XI. "Whatever in the Constitution of South Carolina which militates against the defense of assumption of risk, is superseded by the Employers' Liability Act of Congress.

"Under the common law, which is of force in this State where a servant works with defective appliances, so defective that there will be danger to work with them, then he assumes the risk—if he finds out or has knowledge that these appliances are dangerous to work with, that they are defective, then the law implies a contract between him and his employer that he shall assume the risks of any hurt or damage from those defective appliances.

"Now, then, under this act of Congress, in section five, if the railroad people were to make a contract in writing, that would not exempt them from the provisions of this section which I have read to you about defective appliances, and such a contract would be null and void and of no effect so far as relieving them from the consequences of a violation of this section as to one using defective appliances and machinery. And, Mr. Foreman and gentlemen, if in the one case it is only an implied contract which arises from the use of defective appliances, and in the other case a written contract wouldn't hold good nor relieve them, then I fail to see the philosophy or the good sense in saying that an implied contract would relieve them from the consequences under this act; and it doesn't, in my judgment.

"(Reading section five of same act.)

"Now, then, if they couldn't do it by written agreement or written contract, certainly they couldn't do it by any implied contract which would arise between them and the employees.

"Now, that is my view, and I charge you that is the law. I may be mistaken, but the Supreme Court can correct me if I am wrong. I think when Congress took possession of

this subject and passed this act that it was for the protection of the employees, and I think that they have covered practically the whole subject.

"If you find for the plaintiff under the principles I have tried to explain to you, why you would find him such an amount as would compensate him for the injuries received, for his suffering and his diminished earning power, and such an amount as would compensate him for the loss of his leg and the injuries which he received, generally. Of course, that is based upon the assumption that the defendant is liable.

"Now, in writing out your verdict, just write it out in words and say, we find for the plaintiff so much money, or we find for the defendant. And write out the amount you find for the plaintiff, if you find anything, writing it out in words and not in figures, and sign your name as foreman.

"Now, gentlemen, I haven't gone into any extensive explanation of the defense set up here, but I will say this, Mr. Foreman, that the defendant denies all of this thing and puts the plaintiff on proof, and the plaintiff must prove his case. The defendant sets up that he was guilty of contributory negligence. I have explained to you what contributory negligence is. Also they set up the assumption of risk, and I have explained that.

"Take the record."

*Messrs. Cothran, Dean & Cothran,* for appellant: *Federal law exclusive, and supersedes all State law upon this subject:* 223 U. S. 50, 51, 53; 187 U. S. 146; 226 U. S. 505; 90 S. C. 517; 173 Fed. 527; Doherty, Liability R. R. to Interstate Employees, p. 65; 229 U. S. 119; 206 Fed. 868; 73 Fed. 679; 129 Pac. 336; 210 Fed. 120; 233 U. S. 492. *Law of assumption of risks:* 80 S. C. 232; LaBatt M. & S., sec. 338; 2 S. E. 659; 17 Fed. 882; 45 Fed. 673.

*Mr. J. J. McSwain,* for respondent: *General charge in connection with defendant's fifth and sixth request gave*

*defendant benefit of defense urged:* 78 S. C. 384, 537, 352; 75 S. C. 390; 71 S. C. 156; 72 S. C. 411. *There was no request to charge proposition urged:* 73 S. C. 140; 76 S. C. 116; *Ib.* 207; 77 S. C. 399. *Tenth request was upon the facts and, therefore, properly refused:* See note on cases under Federal Employers' Liability Act, 47 L. R. A. (N. S.) 38. *General doctrine of assumption of risk:* 26 Cyc. 1177; 1 McM. L. 383. *Federal doctrine:* 231 U. S. —, 58 L. Ed. 231; 229 U. S. 317; 233 U. S. 42; 233 U. S. 492; see also 141 N. W. 300; 61 So. 179.

*Mr. M. F. Ansel,* also for respondent, cited the following additional authorities: *Assumption of risks:* 94 S. C. 154; 80 S. C. 238; 220 U. S. 595. *"Car" defined:* 196 U. S. 15 and 16; 231 U. S. 678.

July 31, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for personal injury.

The plaintiff claimed that he was a switchman in the employ of the defendant. That he went to the switch on a switch engine and, after the engine and cars passed over the switch, he threw the switch. That the engine stopped very near the switch. That the rules permitted the engine to move only after he (plaintiff) had given the signal. That he could signal either the fireman or the engineer. That he was on the fireman's side and looked up, but did not see the fireman and gave no signal. That the train crew were in a hurry, and he started across the track to signal the engineer. That when he was on the track he saw the engine coming back rapidly and very close to him. That in order to save himself from being run over by the engine, he jumped at a footboard on the front of the tender (the engine was running backwards), and missed his footing on account of the defective condition of the footboard. The plaintiff was thrown under the engine and seriously injured.

. The defendant set up that the plaintiff himself gave the signal to come back and then went on the track in front of the moving engine. That it was a very dangerous place; denied the defective condition of the board. Pleaded assumption of risk and contributory negligence.

The plaintiff was engaged in making up an interstate train and the defendant claimed that the plaintiff's rights, if any, are under the federal statute. (Act of Congress, April 22, 1908, 35 U. S. Stat. 65, pt. 1, c. 149, U. S. Comp. St. Supp. 1911, p. 1322.)

The trial resulted in a verdict and judgment for the plaintiff, and the defendant appealed upon twelve exceptions. The appellant, however, condenses his exceptions into four propositions, which are as follows:

I. "The specific acts of negligence charged in the complaint are not breaches of any federal statute enacted for the safety of employees."

The point here is that the federal statute (Safety Appliance Act and amendments thereto) forbids the use of defective "running boards," and the board complained of is a "footboard," and a footboard is not within the provision of the federal statute. In the complaint the board in question is called a "footboard." In the answer of appellant the board is called, in the third paragraph, the "running board." In the fourth paragraph it is called the "footboard." In the cross-examination of plaintiff, he was three times asked by appellant about the "running board." In the trial of the cause the appellant used the terms "footboard" and "running board" interchangeably. If there was a difference it ought to have appeared in the evidence, and there was no evidence of a distinction between the two. The appellant requested his Honor, Judge Rice, to charge the jury that the plaintiff had not brought himself within the protection of the federal statute. This his Honor declined to do, and properly so. To illustrate— a man is charged with killing a partridge out of season.

The Judge who tried the case could no more charge that the bird in question was a partridge than he could charge that the defendant had killed it. So here, his Honor could not charge that the board upon which the plaintiff attempted to stand was not a running board, particularly when the words had been used interchangeably by the appellant, and there was no evidence of a distinction in the testimony.

II. "The specific acts of negligence charged in the complaint not being breaches of any federal statute enacted for the safety of employees, the defense of assumption of 2, 3 risk, as at common law, is open to the defendant, unaffected by any constitutional or statutory enactment of South Carolina."

His Honor charged the jury in unmistakable terms, at appellant's request: "VII. This section is to be determined by the provisions of the Employers' Liability Act of Congress, which supersedes all State regulations of the subject."

"XI. Whatever in the Constitution of South Carolina which militates against the defense of assumption of risk is superseded by the Employers' Liability Act of Congress."

This proposition cannot be sustained.

III. "The error of the presiding Judge in construing the Employers' Liability Acts."

In discussing this proposition, appellant says:

"The effect of this charge is that where there is any defect in the appliance furnished by the master, irrespective of the vital inquiry whether the defect is a violation of a federal statute enacted for the safety of .the employee or not, the defense of assumption of risk is eliminated. This, as we submit, under the Horton case (*S. A. L. Ry* v. *Horton*, 34 Sup. St. 635, 233 U. S. 492) is clearly a misconception of the effect of the liability acts. If the defect is not a breach of such a statute, the defense is open as at common law."

In the charge his Honor did make some remarks about the general law of assumption of risks, but he charged the jury in unmistakable terms that the Federal Employers' Liability

22—98.

Act alone governed this case, and it does seem that the jury could not have misunderstood him.    In the particulars mentioned in the federal statute, assumption of risk is not a defense.

IV. "The errors of the presiding Judge in his declaration of the assumption of risk."

His Honor left it, properly, to the jury to say whether the board was a "running board."   If it was a "running board," then the plaintiff was within the protection of the statute if it was defective.   These were questions of fact.   The Judge told the jury that the federal statute alone applied.

The judgment is affirmed.

This case has been carried to the United States Supreme Court upon writ of error.