PAYNE, DIRECTOR GENERAL, ETC., *v.* GEARHART.

*Negligence—Assumption of risk—Knowledge, not acts, essential —Defense not avoided by reply, when—Employe under employer's orders—Risks assumed in interstate commerce— Extraordinary and ordinary risks—Evidence—Failure to call employe as witness—Right to explain absence.*

1. Assumption of risk sounds in contract, and depends not upon the acts but the knowledge of the employe.

2. An answer pleading assumption of risk is not avoided by a reply that the employe was acting under the direction and instruction of his employer. To avoid such defense the employe must plead and prove that the employer by peremptory orders caused the employe to yield his own judgment to that of the employer and enter upon the work notwithstanding the known danger, or that the work at which he was injured was so far outside his regular employment that the hazards thereof were not within either his actual or constructive knowledge.

3. An employe engaged in interstate transportation assumes the extraordinary as well as the ordinary risks of his employment. In such case he assumes the ordinary risk whether he is actually aware of it or not, but he assumes the extraordinary risk only when actually aware of it or when it is so obvious that an ordinarily prudent person would both have observed and appreciated it.

4. An extraordinary risk is one which might be obviated by the employer's exercise of reasonable care.

5. Where a party fails to call an employe as a witness, he should be permitted to account for the absence of such witness and thus rebut the inference which the jury would be justified in drawing from his failing to call such witness.

(Decided January 10, 1922.)

ERROR: Court of Appeals for Lawrence county.

*Mr. Henry Bannon* and *Messrs. Andrews & Irish,* for plaintiff in error.
*Messrs. Johnson & Jones,* for defendant in error.

MAUCK, J. The plaintiff below, James Gearhart, brought his action against John Barton Payne, the director general of railroads, alleging that while engaged in an act of interstate commerce, and in the employ of the director general operating the Chesapeake & Ohio railroad, he sustained serious injuries through his employer's negligence. He alleges that there was a derailed tender on one of the defendant's tracks, and that at the angle it was lying the overturned car was exerting strong pressure against a switch-point, which was held in place by bolts, and that the plaintiff was required to loosen these bolts. He charges that he crawled underneath the car, released the bolts, or some of them, and that the switch-point thereupon violently sprang back, catching plaintiff's foot and leg and injuring him as complained of. He avers that the defendant was negligent in ordering him to release the bolts in the way he did, and in permitting the switch-point to spring back and catch and injure him.

The defendant, by his answer, pleads a general denial, contributory negligence and assumption of risk.

A trial was had and a verdict returned in the sum of sixteen thousand dollars, and to the resulting judgment error is now prosecuted.

Testimony was adduced tending to show negligence on the part of the defendant in not having the switch-point upon which plaintiff was working either blocked or chained, by either of which methods it appeared likely that the injury would have been prevented.

The plea of contributory negligence is not a complete defense under the federal employers' liability act if the injury occurred while the parties were engaged in an act of interstate commerce, and if proven goes to the amount of recovery only.

Without reviewing the many authorities cited and the even more complete collection of them found in 10 American Law Reports, 1184, we are content to say that the record sufficiently shows the interstate character of the work in progress at the time of the injury, and consequently the proper application of the statute mentioned.

This brings us to a consideration of the third defense and the issue of assumed risk raised therein.

The doctrine of assumption of risk is based upon an implied contract. It assumes that the employe is by his wages compensated for the risk which he assumes, and that in consideration of such wages he impliedly agrees to the hazards of his employment. Judge Taft, while on the federal circuit court bench, in *Narramore* v. *Cleveland, C., C. & St. L. Ry. Co.*, 96 Fed. Rep., 298, stated the doctrine as follows, at page 301:

"Assumption of risk is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant

agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk. In such cases the acquiescence of the servant in the conduct of the master does not defeat a right of action on the ground that the servant causes or contributes to cause the injury to himself; but the correct statement is that no right of action arises in favor of the servant at all, for, under the terms of the employment, the master violates no legal duty to the servant in failing to protect him from dangers the risk of which he agreed expressly or impliedly to assume."

Assumption of risk, therefore, depends, not upon what the employe did, but upon what actual or constructive knowledge he may have had of the conditions with reference to which he is supposed to have contracted.

Omitting the acts of contributory negligence therein pleaded, the averments of the third defense that go to the defense of assumption of risk are as follows: " * * * that the plaintiff knew of the position of the rails and of the bent rail, and of the strain on the bent rail and that it might fly back against the other rail when the strain was removed; and the plaintiff was fully informed of the dangers incident to his work and the dangers incident to him in the event the bent rail would spring back after the strain was removed; that such danger was obvious and the injury therefrom so imminent that no person of ordinary prudence would assume the risk of putting his leg in between two railroad rails under the circumstances and conditions aforesaid, and that by virtue of such knowledge on the part of the plaintiff, and the dangers incident to his work and which were obvious to him, he assumed the risk of

the conditions which caused the injuries complained of.''

In addition to his general denial, the plaintiff met the defense of assumption of risk with this aver- ment:

''Whatever work plaintiff was doing at and im- mediately prior to the time he received said injuries, was being done under the direction and instruction of his superior, to-wit, the foreman of said section gang, and an employe of the defendant.''

This was not a sufficient affirmative reply to the defense of assumption of risk, and this is of impor- tance because one of the special instructions herein- after considered seems to have been based upon the same erroneous conception of what is required to overthrow such defense.

When assumption of risk is shown its effect may be avoided, but not by a mere plea that the employe was acting under the direction and instruction of his employer. If, as a sufficient plea of assumption of risk implies, the employe has knowledge of the risk, he is not absolved from his assumption of such risk by the mere fact that he is under the direction of his employer. Presumably he is always under such direction. To adequately avoid the defense of assumption of risk the employe must plead and prove that the employer expressly commanded the employe to enter upon the dangerous undertaking, or by peremptory orders caused the employe to yield his own judgment to that of his employer, or that the work at which he was injured was so far outside his regular employment that the hazards thereof were unknown to him, and, consequently, not within the implied terms of the contract of his employment. 18 Ruling Case Law, 699; note to *Houston East &*

*West Texas Ry. Co.* v. *De Walt,* 97 Am. St. Rep., 877, 896.

On the issues thus joined the court, at the instance of plaintiff, gave the jury two special instructions, now particularly complained of. They were respectively numbered two and four, and read as follows:

"2. The court instructs the jury that if you believe from the evidence, that the foreman, did, within his authority, order the plaintiff, James Gearhart, to work in a dangerous place, or perform the work in a dangerous manner, then and in that event the plaintiff, James Gearhart, did not assume the hazard or risk of obedience, unless the danger was so imminent and obvious that a man of ordinary prudence would not have incurred the risk or hazard.

"4. The court instructs the jury that the servant, here James Gearhart, the plaintiff, assumed only the natural, obvious and known dangers of the employment; that James Gearhart did not assume those dangers which are unknown and latent, or hidden and not obvious to the senses of a man of ordinary prudence in like circumstances."

This instruction number two was, apparently, based upon the same theory of the law that led to the drafting of the reply, and is incorrect for the same reason that the reply is inadequate. It charges that whenever the employe is ordered to work in a dangerous place or in a dangerous manner he does not assume the attendant risk unless the hazard is an obvious one. This is not the rule.

"Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occu-

pation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not." *Seaboard Air Line Ry.* v. *Horton,* 233 U. S., 492, 504.

If the charge had been to the effect that if the jury found the plaintiff to have been working under the express commands of a superior to perform unfamiliar duties, the instruction would have been within the rule prescribed by an eminent authority in these words:

"Where a master commands a servant to go outside of his regular employment to do a work which is attended with special danger, and the servant, in response to the specific commands of his master, goes and does the work in the way and at the time directed, the fact that the servant knew it was dangerous does not exonerate the master from responsibility, or make the servant guilty of contributory negligence, unless the character of the danger be so patent and so extreme that no one but a foolhardy, reckless man would attempt it." *English* v. *Chicago, M. & St. P. Ry. Co.,* 24 Fed. Rep., 906.

But the instruction as given was wrong

Special instruction number four is likewise erroneous. It charges that the employe assumes only the natural dangers of his employment and that he does not assume those which are unknown or hidden and not obvious to one of ordinary prudence. This is the undoubted rule in many jurisdictions. It was the rule prescribed in *Van Duzen Gas & Gasoline Engine Co.* v. *Schelies,* 61 Ohio St., 298. That rule has since been modified in *Cincinnati Gas & Electric Co.* v. *Johnston,* 76 Ohio St., 119, and elsewhere, and to just what extent it remains the law in this state

need not now be determined. It is not, however, the rule in the federal courts, and by the latter rule we are bound. Under the federal act the employe may assume not only the natural or ordinary risks, but the unnatural or extraordinary risks (*Seaboard Air Line Ry.* v. *Horton, supra; Boldt, Admx.,* v. *Penn. Rd. Co.,* 245 U. S., 441), there being, of course, a wide difference in the rules under which the two different kinds of risk are assumed.

The terms "ordinary risk" and "extraordinary risk" are not fortunate, and the usual acceptation of the term extraordinary risk, as distinguished from an ordinary one, would imply that the former had reference to a greater degree of danger than the latter. This is not, however, their legal distinction. An extraordinary risk is one which might be obviated by the exercise of reasonable care on the master's part, or one which would not have existed if the master had not been negligent in the performance of his contractual duties. 3 Labatt's Master and Servant (2 ed.), Sections 894 and 1178.

"In respect of the assumption by a servant of extraordinary risks, a risk becomes transformed from an ordinary one into an extraordinary risk whenever, among other conditions, the master's negligence contributes an added hazard to the situation in which the servant is placed; the word 'extraordinary' not being used to denote magnitude or as a mark of degree, but to indicate that the risk is one which lies outside of the sphere of the normal." *Baer* v. *Baird Machine Co.,* 79 Atl. Rep., 673 (84 Conn., 269).

See also *Smith* v. *Hines, Dir. Genl. of Rds.,* 119 Me., 442, 111 Atl. Rep., 761, and *Seaboard Air Line Ry.* v. *Horton, supra.*

"So far as extraordinary hazards are concerned, an interstate railway employee may assume that the employer and his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and dangers arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them." *Chicago, Rock Island & Pacific Ry. Co.* v. *Ward,* 64 Law Ed., 430 (252 U. S., 18).

The evidence in this case tends to show that the hazard resulting in plaintiff's injury was an extraordinary one arising from the defendant's negligence in not blocking or chaining the bent rail. The instruction, therefore, ought to have followed the rule in the *Horton case,* to the effect that if the risk were an ordinary one he assumed it whether actually aware of it or not, but, if an extraordinary one, that he assumed it only when actually aware of the defendant's negligence and of the resulting risks, or constructively aware thereof because both were so obvious that an ordinarily prudent person would have observed and appreciated them. As given, this instruction was incorrect, because in its first clause it denied the possibility of the assumption of an extraordinary risk, and because in its second clause it erroneously stated the federal rule as to ordinary risks.

The record shows an error in the rejection of testimony. The plaintiff's testimony tended to show that he was ordered into the dangerous place where he received his injuries by his immediate superior, one Green Dunnigan. The witnesses differed as to the precise nature of these orders and as to the degree of peremptoriness which accompanied them. Dunnigan was not called as a witness by the defend-

ant. Thereupon, while the defendant's claim agent was on the stand the defendant propounded several questions designed to show that Dunnigan was no longer in the employ of the defendant and had been discharged from its service. This testimony was refused. There appears no good reason why the proffered testimony was excluded. The general rule is that such testimony is competent. An editorial note to Ann. Cases, 1912 B, 1014, supported by a long list of authorities, says:

"It is well settled that where a party to an action fails to call a witness known to have knowledge of facts relevant to the issue, and whom he would naturally be expected to call, such as a relative or *employee,* evidence is admissible on the part of such party to account for the absence of the witness, and to rebut the possible unfavorable inference which might be drawn by the jury from the failure to call him."

The Ohio cases point in the same general direction. *Western Union Telegraph Co.* v. *Sullivan,* 82 Ohio St., 14; *Toledo Railways & Light Co.* v. *Poland, Guardian,* 7 Ohio App., 397; *Toledo Ry. & Light Co.* v. *Ward,* 2 C. C., N. S., 256, 15 C. D., 399. In the *Poland case* the court of appeals of Lucas county, in the second paragraph of the syllabus, holds as follows:

"Where it becomes important for the defendant to explain the omission to call a witness, who was in employ of defendant and present at the happening of a stated event, it is error to exclude evidence offered by defendant showing that no record was kept by defendant of the address of such employe."

There is some distinction to be drawn between this case and the case at bar, for in the instant case the

defendant was not willing to have the witness answer the question "What is the present residence of the foreman, Green Dunnigan?" It appears from the record as a whole that the defendant was probably aware of the residence of Dunnigan, and it is to be presumed that his deposition could have been taken. The defendant was, nevertheless, entitled to show that Dunnigan was no longer in his employment, to relieve him from the presumption arising from what appeared to be his failure to call a present employe, and the testimony tending to show that fact was improperly excluded.

We are not ready to say, however, that if this was the only error in the case it would be sufficiently prejudicial to warrant a disturbance of the verdict.

For the errors pointed out, the judgment is reversed and the cause remanded for new trial.

*Judgment reversed, and cause remanded.*

SAYRE and MIDDLETON, JJ., concur.