# SEABOARD AIR LINE RAILWAY *v.* HORTON.

## ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 691. Argued February 27, 1914.—Decided April 27, 1914.

A writ of error in terms returnable within thirty days from the date thereof substantially complies with the return day provision in clause 5 of Rule 8 of this court.

Where the state court of last resort sustained the trial court in overruling contentions made by the plaintiff in error, asserting a construction of the Employers' Liability Act which if acceded to would have resulted in a verdict in his favor, this court has jurisdiction under § 237, Judicial Code.

Since Congress, by the Employers' Liability Act of 1908, took control of the liability of carriers engaged in interstate transportation by rail to employés injured while engaged in interstate commerce, all state laws upon the subject have been superseded. *Second Employers' Liability Cases*, 223 U. S. 1, 55.

Whatever may have been the common law rule theretofore, Congress, in enacting the Employers' Liability Act, intended to, and did, base the action on negligence only and excluded responsibility of the carrier to its employés for defects and insufficiencies not attributable to negligence.

The provision diminishing liability of the carrier in case of contributory negligence on the part of the injured employé except where there has been a violation by the carrier of any statute enacted for the safety of employés, relates to Federal statutes only and not to state statutes.

The Employers' Liability Act having expressly eliminated the defense of assumption of risk in certain specified cases, the intent of Congress is plain that in all other cases such assumption shall have its former effect as a bar to an action by the injured employé.

When the employé knows of a defect in the appliances used by him and appreciates the resulting danger and continues in the employment without objection, or without obtaining from the employer an assurance of reparation, he assumes the risk even though it may arise from the employer's breach of duty.

Where there is promise of reparation by the employer, the continuing on duty by the employé does not amount to assumption of risk unless the danger be so imminent that no ordinarily prudent man would rely on such promise.

Under the Employers' Liability Act a defect in an appliance which is not covered by any of the Federal Safety Acts does not leave the employer absolutely responsible for the defect, but the common law rule as to assumption of risk applies; and so *held* as to a defect in a water gauge of which the engineer had knowledge before the accident resulting therefrom.

162 No. Car. 77, reversed.

THE facts, which involve the construction of the Federal Employers' Liability Acts of 1908 and 1910, and the effect of those statutes on state laws in regard to liability of employers, are stated in the opinion.

*Mr. Benjamin Micou* and *Mr. Murray Allen,* with whom *Mr. Hilary A. Herbert* and *Mr. Richard P. Whiteley* were on the brief, for plaintiff in error.

*Mr. William C. Douglass* and *Mr. Clyde A. Douglass* for defendant in error:

There is no Federal question. Plaintiff in error has been denied no right, privilege, or immunity under the Employers' Liability Act and this court has no jurisdiction.

Plaintiff in error did not specifically claim, nor was it denied, any right, privilege, or immunity under the Employers' Liability Act.

Assumption of risk is a common-law defense and not a creation of the Federal power.

Plaintiff in error elected to have the question of defendant in error's continuing to work in the face of a known danger, tried under both the issue of contributory negligence and assumption of risk.

The record in this case shows clearly that the writ of error was taken for delay only, and that the questions on which the decision depends are so frivolous as not to need further argument, and that the case is of such a character as not to justify extended argument.

The servant cannot assume the risk of the negligence of the master.

This case was properly submitted to the jury upon the doctrine of the ideal prudent man.

In support of these contentions, see *Avandano* v. *Gay*, 8 Wall. 377; *Barber Asphalt Co.* v. *Austin*, 186 Fed. Rep. 443; *Burnett* v. *Atlantic Coast Line*, 79 S. E. Rep. 414; *Bissell* v. *Lumber Co.*, 152 Nor. Car. 124; *Bridgers* v. *St. Louis R. R. Co.*, 6 Mo. App. 389; *Craig* v. *Chicago R. R. Co.*, 91 Michigan, 634; *Consolidated &c. Co.* v. *Heanni*, 35 N. E. Rep. 162; *Deninger* v. *Am. Locomotive Co.*, 185 Fed. Rep. 32; *Fosburg* v. *Railroad Co.*, 94 N. Y. 374; *Gotlich* v. *Railroad Co.*, 100 N. Y. 467; *Green* v. *Minn. & St. L. R. R. Co.*, 39 Minnesota, 248; *Gardner* v. *Railroad Co.*, 150 U. S. 349; *Hicks* v. *Manufacturing Co.*, 138 Nor. Car. 319; *Hudson* v. *Railroad Co.*, 104 Nor. Car. 491; *Hemarick* v. *Railway Co.*, 186 Fed. Rep. 142; *Kane* v. *Nor. Cent. R. R. Co.*, 112 U. S. 91; *Lake Shore R. R. Co.* v. *McCormick*, 79 Indiana, 440; *Leggett* v. *Railroad Co.*, 152 Nor. Car. 111; *Mann* v. *Railroad Co.*, 111 Nor. Car. 482; *Marks* v. *Cotton Mills*, 138 Nor. Car. 402; *Murdock* v. *Memphis*, 20 Wall. 590; *N. Y. Elev. R. R. Co.* v. *Fifth Natl. Bank*, 135 U. S. 432; *Perkins* v. *So. Car. R. R. Co.*, 48 So. Car. 364; *Penna. R. R. Co.* v. *Hughes*, 191 U. S. 478; *Pressly* v. *Yarn Mills*, 138 Nor. Car. 417; *Schlacher* v. *Ashland Iron Co.*, 89 Michigan, 262; *Sims* v. *Lindsay*, 122 Nor. Car. 678; *Sibbert* v. *Cotton Mills*, 145 Nor. Car. 211; *So. Pac. Co.* v. *Yeargan*, 109 Fed. Rep. 441; *Snow* v. *Railroad*, 8 Allen, 441; 1 Shear. & Redf. on Neg., § 194; *Tanner* v. *Lumber Co.*, 140 Nor. Car. 477; *Un. Pac. R. R. Co.* v. *O'Brien*, 161 U. S. 452; *Worley* v. *Laurel River Co.*, 73 S. E. Rep. 107; 1 White on Personal Injuries, §§ 370, 377; *Wright* v. *Yazoo &c. R. R. Co.*, 197 Fed. Rep. 96.

The charge should be considered as a whole. The refusal to grant special requests to charge is not error, when their substance is embraced in the instructions actually given. *Northern Pac. Ry. Co.* v. *Urlin*, 158 U. S. 271; *Railroad Co.* v. *Leak*, 163 U. S. 280; *Laber* v. *Cooper*, 7

Wall. 565; *Mining Co.* v. *Cheeseman,* 116 U. S. 529; *Insurance Co.* v. *Ursur,* 144 U. S. 439; *Ayers* v. *Watson,* 113 U. S. 594.

MR. JUSTICE PITNEY delivered the opinion of the court.

Horton sued the Seaboard Air Line Railway in the Superior Court of Wake County, North Carolina, to recover damages for personal injuries sustained by him while in defendant's employ as a locomotive engineer. The action was brought under the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, as amended April 5, 1910, c. 143, 36 Stat. 291. In the complaint it was sufficiently averred that defendant was a corporation operating a line of railway as a common carrier in interstate commerce, and that plaintiff at the time he was injured was employed by defendant in such commerce. These facts were not in issue at the trial.

As to the circumstances of the occurrence of the injury, plaintiff's evidence tended to show that on July 27, 1910, defendant's locomotive engine No. 752 was placed in his charge; that it was equipped with a Buckner water gauge, a device attached to the boiler head for the purpose of showing the level of the water in the boiler, and consisting of a brass frame or case inclosing a thin glass tube which communicated with the boiler above and below, in such manner that the tube received water and steam direct from the boiler and under the full boiler pressure. In order to shield the engineer from injury in case of the bursting of the tube, a piece of ordinary glass, 2 or 3 inches wide, 8 or 9 inches long, and about half an inch thick, known as a guard glass, should have been provided, this being a part of the regular equipment of the Buckner water gauge. There were slots for receiving the guard glass and holding it in position in front of the water tube. At each end of the tube, valves were provided for the purpose of disconnect-

ing it from the boiler.  As an alternative but probably
less convenient method of determining the level of the
water in the boiler, ordinary gauge cocks were provided.

Plaintiff was an experienced locomotive engineer, and,
according to his own testimony, was fully aware of the
function of the guard glass and of its importance to his
safety.  He testified that when he took the engine out on
his first trip on July 27, he observed that the guard glass
was missing; that on his return upon the following day he
reported this to defendant's round-house foreman, to
whom reports of such defects were properly made, and
asked him for a guard glass; that the foreman stated there
were none in stock at that place, and it would be necessary
to send to a distance to get one; that he would do this, and
that plaintiff should meanwhile run the engine without
one; and that, having ineffectually endeavored to get a
guard glass from another source, plaintiff proceeded to
drive the engine with the use of the unguarded water
gauge until August 4, when the glass exploded and flying
fragments struck him in the face, causing the injuries
upon which his claim for damages was based.

Defendant's evidence tended to show that when the
engine was placed in plaintiff's charge on July 27 the water
glass was in good condition, with a guard glass in place;
that the gauge cocks were likewise in good working order;
that it was the duty of a locomotive engineer to inspect
his engine and know that it was in proper order before
taking it out, and if not in proper order to make a written
report to the round-house foreman specifying the defects;
that if anything should happen to the water glass it was
the engineer's duty to close the valves so as to exclude the
steam pressure from it, and run the engine with the gauge
cocks, and that these were sufficient for the purpose; and
that plaintiff made repeated reports in writing between
July 27 and the time of his injury mentioning other things
needed about his engine, but making no mention of the

water gauge or the guard glass. The fireman testified specifically that when plaintiff took charge of the engine on the morning of the 27th the water glass had the shield or guard in front of it, but that it was smoky, so that one could not see through it; that he, the fireman, in the presence of plaintiff, removed the guard glass in order to clean it; and that in plaintiff's presence it became broken. The round-house foreman specifically denied plaintiff's testimony about the complaint and the promise of reparation.

Under instructions presently to be noticed, the case was submitted to the jury upon three issues, to which responses were made as follows:

(1) Was the plaintiff injured by defendant's negligence? Answer, Yes.

(2) If so, did plaintiff assume the risk of injury? Answer, No.

(3) Did plaintiff by his own negligence contribute to his injury? Answer, Yes.

The jury also assessed substantial damages, for which judgment was rendered by the trial court, and upon appeal the Supreme Court affirmed the judgment, 162 Nor. Car. 424. The case comes here, under § 237, Judicial Code, upon questions arising out of instructions given and refused to be given to the jury as to the nature of the duty of the employer and the rules respecting assumption of risk and contributory negligence under the Federal Employers' Liability Act.

There is a motion to dismiss, upon the ground that no return day is specified in the writ of error or citation. *Carroll* v. *Dorsey* (1857), 20 How. 204, 207, and *Sea* v. *Connecticut Mutual Life Ins. Co.* (1880), 154 U. S. 659, are relied upon. These decisions were based upon § 22 of the Judiciary Act of September 24, 1789, c. 20, 1 Stat. 73, 84, which was held to require a certain return day to be specified in the writ of error. Accordingly, General Rule

33, promulgated December Term, 1867 (6. Wall. vi), afterwards found as Clause 5 of Rule 8 of the revised rules promulgated January 7, 1884 (108 U. S. 577), required that the writ of error and citation should be returnable on the first day of the term in cases where final judgment was rendered more than thirty days before that day, and on the third Monday of the term in cases where judgment was rendered less than thirty days before the first day.  Blatch. U. S. Ct. Rules 77.  But under the authority conferred by Rev. Stat., § 917, the court, on January 26, 1891, amended Clause 5 of Rule 8 so as to read: "All appeals, writs of error, and citations must be made returnable not exceeding thirty days from the day of signing the citation, whether the return day fall in vacation or in term time, and be served before the return day," (137 U. S. 710).  And in the present Rule as promulgated December 22, 1911 (222 U. S., Appendix, p. 14), the same language is retained, with an exception extending the time to sixty days in writs of error and appeals from the western States, and Alaska, Hawaii and Porto Rico, and to one hundred and twenty days as to the Philippine Islands.  An extension of the time in favor of the more distant States and Territories was first introduced as Clause 3 of Original Rule 63, promulgated at December Term, 1853 (16 How. ix), and has been continued, with amendments, until the present time (21 How. viii; 2 Wall. viii; 108 U. S. 578).  It has, however, no bearing upon the form of the writ or citation, aside from the limit of time that may be allowed between date and return.

The present writ of error and citation were dated the fourth day of August, 1913, and in terms were returnable "within thirty days from the date hereof."  This form has been usually employed, with the approval of the court, since the amendment of the rule made in 1891, as mentioned.  It is a substantial compliance with the present

rule, and tends to avoid errors that otherwise might be made in inserting a day certain as a return day.

This motion must therefore be denied.

A second motion to dismiss, based upon grounds still more technical, and which need not be particularly stated, will likewise be denied.

There is a further motion to dismiss for want of jurisdiction, upon the ground that no right, privilege, or immunity under the Employers' Liability Act was especially set up or claimed in the state court of last resort and by that court denied. But since that court sustained the trial court in overruling certain contentions made by plaintiff in error asserting a construction of the act which, if acceded to, would presumably have produced a verdict in its favor, and consequent immunity from the action, this motion must be denied, upon the authority of *St. Louis, Iron Mountain & Southern Ry.* v. *McWhirter*, 229 U. S. 265.

Coming now to the merits, we need consider only certain assignments of error that are based upon exceptions to the action of the trial judge in giving and refusing to give instructions relating to the issues of defendant's negligence, the assumption of risk, and contributory negligence.

At the outset we observe that the judge evidently misapprehended the effect of the Federal act upon state legislation. Thus, the jury was told that plaintiff had brought the action under the Federal statute; "And where Congress enacts a law, within the limits of its power, that law should be enforced uniformly throughout the entire United States. If it is in conflict with the state law, the state law is superseded, but where there is no conflict expressed by the statute of the United States, then the rule of the State prevails." This, of course, in the absence of a specific statement of the applicable rule of the state law, might be treated as academic. But the theory

was. carried into the specific instructions, to the extent that upon the. questions of the employer's duty and the assumption of risk by the employé, the charge was modeled rather upon the North Carolina statute than upon the act of Congress. By § 2646, Nor. Car. Revisal of 1905, "Any servant or employé of any railroad company operating in this State who shall suffer injury to his person, or the personal representative of any such servant or employé who shall have suffered death in the course of his services or employment with such company by the negligence, carelessness or incompetence of any other servant, employé or agent of the company, or by any defect in the machinery, ways or appliances of the company, shall be entitled to maintain an action against such company. Any contract or agreement, expressed or implied, made by any employé of such company to waive the benefit of this section shall be null and void."

Upon the issue of defendant's negligence, the trial court charged the jury as follows: "It is the duty of the defendant to provide a reasonably safe place for the plaintiff to work, and to furnish him with reasonably safe appliances with which to do his work." And in various other forms the notion was expressed that the duty of defendant was absolute with respect to the safety of the place or work and of the appliances for the work. Thus: "If you find from the evidence that it [the locomotive engine] was turned over to him without the guard, and if you further find from the evidence that the guard was a proper safety provision for the use of that gauge, and that it was unsafe without it, then the defendant did not furnish him a safe place and a safe appliance to do his work, and if it remained in that condition it was continuing negligence on the part of the defendant, and if he was injured in consequence thereof, if you so find by the greater weight of the evidence, you should answer the first issue 'Yes.'"

In these instructions the trial judge evidently adopted the same measure of responsibility respecting the character and safe condition of the place of work, and the appliances for the doing of the work, that is prescribed by the local statute. But it is settled that since Congress, by the act of 1908, took possession of the field of the employer's liability to employés in interstate transportation by rail, all state laws upon the subject are superseded. *Second Employers' Liability Cases,* 223 U. S. 1, 55.

The Act is quoted in full in that case at p. 6. By its first section a right of action is conferred (under conditions specified) for injury or death of the employé "resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

This clause has two branches: the one covering the negligence of any of the officers, agents, or employés of the carrier, which has the effect of abolishing in this class of cases the common law rule that exempted the employer from responsibility for the negligence of a fellow employé of the plaintiff; and the other relating to defects and insufficiencies in the cars, engines, appliances, etc. But, plainly, with respect to the latter as well as the former ground of liability, it was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employés for defects and insufficiencies not attributable to negligence. The common law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employés is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work

may be safe for the workmen. *Hough* v. *Railway Co.*, 100 U. S. 213, 217; *Washington & Georgetown Railroad Co.* v. *McDade*, 135 U. S. 554, 570; *Choctaw, Oklahoma & Gulf R. R. Co.* v. *McDade*, 191 U. S. 64, 67. To hold that under the statute the railroad company is liable for the injury or death of an employé resulting from any defect or insufficiency in its cars, engines, appliances, etc., however caused, is to take from the act the words "due to its negligence." The plain effect of these words is to condition the liability upon negligence; and had there been doubt before as to the common law rule, certainly the Act now limits the responsibility of the company as indicated. The instructions above quoted imposed upon the employer an absolute responsibility for the safe condition of the appliances of the work, instead of limiting the responsibility to the exercise of reasonable care. In effect, the jury was instructed that the absence of the guard glass was conclusive evidence of defendant's negligence. In this there was error.

The questions more particularly discussed, however, and upon which the decision seems to have turned in the Supreme Court of North Carolina, pertain to the issues of assumption of risk and contributory negligence. By § 3 of the act of 1908 it is declared that "The fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé: *Provided,* that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé." And by § 4, "Such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for

the safety of employés contributed to the injury or death of such employé."

By the phrase "any statute enacted for the safety of employés," Congress evidently intended Federal statutes, such as the Safety Appliance Acts, (March 2, 1893, c. 196, 27 Stat. 531; March 2, 1903, c. 976, 32 Stat. 943; April 14, 1910, c. 160, 36 Stat. 298; February 17, 1911, c. 103, 36 Stat. 913); and the Hours of Service Act (February 4, 1907, c. 2939, 34 Stat. 1415). For it is not to be conceived that, in enacting a general law for establishing and enforcing the responsibility of common carriers by railroad to their employés in interstate commerce, Congress intended to permit the legislatures of the several States to determine the effect of contributory negligence and assumption of risk, by enacting statutes for the safety of employés, since this would in effect relegate to state control two of the essential factors that determine the responsibility of the employer.

It seems to us that § 4, in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action. And, taking §§ 3 and 4 together, there is no doubt that Congress recognized the distinction between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employé, there is, with respect to cases not in this category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was deemed feasible.

The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employé, and since it is ordinarily his duty to take some precaution

for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employés in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employé. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employé is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court. *Choctaw, Oklahoma & Gulf R. Co.* v. *McDade*, 191 U. S. 64, 68; *Schlemmer* v. *Buffalo, Rochester & Pittsburgh Ry. Co.*, 220 U. S. 590, 596; *Tex. & Pac. Ry. Co.* v. *Harvey*, 228 U. S. 319, 321; *Gila Valley Ry. Co.* v. *Hall*, 232 U. S. 94, 102, and cases cited.

When the employé does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employé

assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employé relying upon the promise does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise. *Hough* v. *Railway Co.*, 100 U. S. 213, 224; *Southwestern Brewery* v. *Schmidt*, 226 U. S. 162, 168. This branch of the law of master and servant seems to be traceable to *Holmes* v. *Clarke*, 6 Hurl. & Norm. 348; *Clarke* v. *Holmes*, 7 Hurl. & Norm. 937.

In the light of these principles, the rulings of the trial court in the case at bar must be considered.

Defendant specifically requested an instruction that plaintiff's right to recover damages was to be determined by the provisions of the Federal act, and that "If you find by a preponderance of evidence that the water glass on the engine on which plaintiff was employed was not provided with a guard glass, and the condition of the glass was open and obvious and was fully known to plaintiff, and he continued to use such water glass with such knowledge and without objection, and that he knew the risk incident thereto, then the court charges you that the plaintiff voluntarily assumed the risk incident to such use, and you will answer the second issue 'Yes.'" The court gave this instruction as applicable to the issue of contributory negligence, and instead of the words "then the court charges you that the plaintiff voluntarily assumed the risk incident to such use, and you will answer the second issue 'Yes,'" used the words, "then the court charges you that the plaintiff was guilty of contributory negligence, and you will answer the third issue 'Yes.'" To the refusal to give the instruction as requested, and the modification of it, defendant excepted.

The trial court evidently deemed, as did the state Supreme Court, that the topic of assumption of risk, with reference to the circumstances of the case, was sufficiently and properly covered by an instruction actually given as follows: after stating in general terms that "A man assumes the risk, when he takes employment, incident to the class of work which he has to perform," but that "He does not assume the risk incident to the negligence of his employer in providing machinery and appliances with which he has to work," the court proceeded as follows:

"On the other hand the employer has the right to assume that his employé will go about the work in a reasonably safe way, and give due regard to the machinery and appliances which are in his hands and under his control, and if you should find from the evidence, by its greater weight, because the burden in this instance is on the defendant, that the plaintiff knew of the absence of the guard or shield to the water gauge and failed to give notice to the defendant or to the agent whose duty it was to furnish the water gauge and appliance, and he continued to use it without giving that notice, *it being furnished to him in a safe condition,* then he assumed the risk incident to his work in the engine with the glass water gauge in that condition, although he might have handled his engine in every other respect with perfect care." [Italics ours.]

It will be observed that by this instruction the application of the rule of assumption of risk was conditioned upon the jury finding that the water gauge, when furnished to plaintiff, was in a safe condition. Here again the court appears to have followed the local statute, rather than the act of Congress; for § 2646, Nor. Car. Revisal of 1905, already quoted, has been held by the state Supreme Court to abolish assumption of risk as a bar to an action by a railroad employé for an injury attributable to defective appliances furnished by the employer. *Coley* v. *Railroad*

*Co.*, 128 Nor. Car. 534. The trial court, while recognizing that the act of Congress applied so far as its terms extended, and that by its terms the employé is not to be held to have assumed the risk in any case where the violation by the carrier of a statute enacted for the safety of employés contributed to the injury, at the same time held that, since no statute had been enacted covering such an appliance as the glass water gauge, the rights of plaintiff were such as he would have under the state law. An instruction to the jury to this effect preceded the instructions we have just quoted.

It is true that such an appliance as the water gauge and guard glass in question is not covered by the provisions of the Safety Appliance Act, or any other law passed by Congress for the safety of employés, in force at the time this action arose. But the necessary result of this is, not to leave the employer responsible for the consequences of any defect in such an appliance, excluding the common law rule as to assumption of risk, but to leave the matter in this respect open to the ordinary application of the common law rule. The adoption of the opposite view would in effect leave the several state laws, and not the act of Congress, to control the subject-matter.

By the instruction as given, the application of the rule of assumed risk was confined to the single hypothesis that the jury should find the guard glass was in position when the engine was delivered to plaintiff on the morning of July 27. This, as already pointed out, was one of the questions in dispute; plaintiff having testified that the guard glass was missing at that time, while his fireman testified (and in this was corroborated by circumstantial evidence) that it was in place at that time, and was subsequently broken. But by the common law, with respect to the assumption by the employé of the risk of injuries attributable to defects due to the employer's negligence, when known and appreciated by the employé

and not made the subject of objection or complaint by him, it is quite immaterial whether the defect existed when the appliance was first placed in his charge, or subsequently arose. Hence, if the guard glass was missing when plaintiff first took the engine, as he testified, and he, knowing of its absence and the consequent risk to himself, continued to use the water gauge without giving notice of the defect to the defendant or its representative, he assumed the risk.

Defendant was entitled to have the requested instruction given respecting assumption of risk, and as the charge actually given did not cover the same ground, there was error.

Its harmful effect is conspicuously evident when we note that the jury, while finding that plaintiff did not assume the risk, at the same time found that he did by his own negligence contribute to his injury. Presumably, if instructed in the manner requested by defendant, the jury would have found that the risk was assumed, and this would have entitled defendant to a judgment in its favor, instead of a mere mitigation of the damages, which was the consequence of a finding of contributory negligence.

The judgment of the Supreme Court of North Carolina must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*