### WASHINGTON TERMINAL CO. v. SAMPSON.

(Court of Appeals of District of Columbia. Submitted November 7, 1922. Decided May 7, 1923.)

No. 3805.

**1. Master and servant �köä204(1)—Employers' Liability Act of 1908 superseded act of 1906, so far as applicable to carriers by railroad.**

The federal Employers' Liability Act April 22, 1908 (Comp. St. §§ 8657–8665), which applied to interstate carriers by railroad, and which permitted the defense of assumption of risk, except in the cases specified in section 4 of the act (Comp. St. § 8660), superseded in the District of Columbia Act June 11, 1906, which had been held unconstitutional as applied to carriers operating in the states, but valid as to carriers within the District of Columbia, and which abolished the doctrine of assumption of risk, at least in so far as carriers by railroads within the district were concerned, since it is not to be supposed that Congress intended that two acts providing for relief in the same class of cases, one allowing the defense of assumption of risk and the other not, should be concurrently in force.

**2. Master and servant ⊫ä204(1)—Defense of assumption of risk available under Employers' Liability Act.**

Under the federal Employers' Liability Act 1908 (Comp. St. §§ 8657–8665), the defense of assumption of risk by the employee may be invoked by the employer, unless the case comes within the exceptions specified in section 4 (Comp. St. § 8660).

**3. Master and servant ⊫ä288(5)—Evidence held to require submission of issue of assumption of risk.**

In an action for injuries to a servant under the federal Employers' Liability Act 1908 (Comp. St. §§ 8657–8665), evidence *held* to require submitting to the jury the issue of the assumption by the servant of the risk of injury from handling buckets furnished by the employer which were old and broken, so as to have jagged pieces of metal protruding therefrom.

**4. Master and servant ⊫ä220(7)—Complaint to foreman does not relieve servant from assumption of risk.**

The fact that a servant complained to his foreman of the dangerous condition of the appliance furnished does not relieve him from the assumption of the risk, in the absence of evidence that the foreman promised to furnish a new appliance as an inducement for the servant's continuance in the service.

---

⊫äFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Appeal and error ⬤274(5)—Exception to instruction held to raise question of failure to instruct on assumption of risk.**

An exception to an instruction on contributory negligence under the federal Employers' Liability Act 1908 (Comp. St. §§ 8657–8665), based on the ground that the testimony showed the defense of assumption of risk was applicable, and that contributory negligence did not enter into the case, and that the court could not identify the assumption of risk with that of contributory negligence, is sufficient to raise on appeal the court's failure to instruct on the defense of assumption of risk.

Writ of error to the Municipal Court for the District of Columbia.

Action by John R. Sampson against the Washington Terminal Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

George E. Hamilton, John J. Hamilton, and George E. Hamilton, Jr., all of Washington, D. C., for plaintiff in error.

A. L. Newmeyer and M. W. King, both of Washington, D. C., for defendant in error.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This case comes here on a writ of error to the municipal court for the District of Columbia, in which Sampson, the plaintiff below, defendant in error here, recovered judgment on the verdict of a jury in his favor against the Washington Terminal Company, a common carrier by railroad in the District.

The main question at issue is whether or not the defense known as assumption of risk is available in this case. The discussion, therefore, is first directed to the question as to whether the statute commonly known as the federal Employers' Liability Act of June 11, 1906 (34 Stat. 232), or the federal Employers' Liability Act of April 22, 1908 (Comp. St. §§ 8657–8665), is the statute in force, and under which recovery may be had, if at all, in this suit; the Terminal Company contending that the latter and not the former act controls.

The earlier act relates to common carriers in the District of Columbia and elsewhere, while the later one relates to liability of common carriers by railroad. By the former the defense of assumption of risk in cases of the character now before us was abolished. Philadelphia B. & W. R. Co. v. Tucker, 35 App. D. C. 123, affirmed 220 U. S. 608, 31 Sup. Ct. 725, 55 L. Ed. 607. Under the later statute that defense was not abolished, except in the cases especially referred to in section 4 thereof (Comp. St. § 8660). Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062; L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Jacobs v. S. R. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970.

The act of 1906 was held unconstitutional so far as it related to interstate commerce. Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. Later it was held that, as related to common carriers within the District of Columbia, it was constitutional as a regulation of commerce in the District because of the plenary pow-

ers of Congress over the District. El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. 106. Appellee contends it is still in force here, and that therefore the defense of assumption of risk was not open to the defendant below.

It is unnecessary to enter into any lengthy discussion as to precisely how far the act of 1908 repealed the act of 1906; that it did repeal it was the opinion of the Supreme Court of the state of Washington, although that precise question, as appellee points out, was not directly before the court for consideration. Walsh v. Alaska Steamship Co., 101 Wash. 295, 172 Pac. 267. See, also, Roberts on Federal Liability of Carriers, 979.

[1] We think, in view of the fact that the two acts treat of the same subject-matter, namely, the liability of common carriers, the former relating to common carriers of every description and the latter to common carriers by railroad, that the later act was designed at least to provide an exclusive remedy against common carriers of the latter class. This view is confirmed by the provision of the last section of the act of 1908 that it should not affect any proceeding or right of action under the earlier act. If Congress had intended that the act of 1906 as to common carriers by railroad was to be continued in force, that saving provision would have been unnecessary, and in addition it is hardly to be supposed that it intended that the two acts providing for relief in the same class of cases, one allowing the defense of assumption of risk and the other not, should concurrently be in force and effect.

[2] The act of 1908 is the latest expression of legislative will, and no good reason presents itself why the Terminal Company, a common carrier by railroad, is not entitled to the benefits thereof. Under section 4 of the act, in cases where the facts justify it, the defense of assumption of risk by the employee may be invoked by the employer, unless it is excluded by the terms of the section. Seaboard Air Line Co. v. Horton, supra. It is not claimed in this case that it is so excluded. The court in the trial below proceeded upon the theory that the defense of assumption of risk was not in the case; hence it is necessary to inquire whether the facts justify that defense, and, if so, was it properly interposed?

The defendant below introduced no evidence in its behalf tending to dispute that of plaintiff. Sampson testified that he had been employed by the company since 1917, some of the time as an extra car inspector, air brake inspector, and repair man; that at the time of the accident he was employed as an icer, his duties being to supply ice to water coolers on railroad cars in the terminal yard here. For that purpose he carried ice in buckets (presumably of metal) furnished by the company. August 8, 1921, he went to his work about 11 p. m., and found three ice buckets which had been left by the prior shift. Each bucket had a capacity of from 15 to 20 pounds of ice and was carried by means of a bail or handle. He selected what he thought was the best one of the three—to use his language, "the one least out of repair and that leaked the least." The bucket was offered in evidence and showed jagged pieces near the outer rim, worn and torn from position.

He iced one car and as he was leaving it with some 12 or 14 pounds of ice in the bucket which he was carrying with his left arm through the handle, steadied by his left hand on the bucket rim, a jagged or torn piece of the bucket caught in the side of the car, the ice slid down, he reached over with his right hand to grab the end of the bucket, and soon discovered one finger on the left hand was bleeding, caused, it is assumed, by lacerating it upon a jagged piece of the metal. He told the assistant foreman about it, and then at his direction went back and finished the work. As a result of the injury to his finger he sustained blood poisoning, which required medical attention and was unable to go back to work for about two months.

He also testified that about two weeks before the accident the ice buckets were in about the same condition and he continued to use them; that three or four days before the accident he complained of the dangerous condition of the bucket he used to the foreman and assistant foreman; that the foreman wrote an order and told him to go and get a new bucket; that the man in the storehouse said there were none, so he went along and worked with the bucket he had; that both foremen told him he would have to use what he had; that two or three days before the accident he complained to the assistant foreman that the bucket was dangerous and leaked, and told him "the buckets were bad to go in the cars with; that they were dangerous to passengers, let alone to work with"; that several times he told the assistant foreman that the buckets leaked, and that the latter said to do the best they could with the buckets as they were.

[3] It may be assumed that the Terminal Company was negligent in supplying Sampson with the defective bucket, and hence the vital question is whether the latter assumed the risk resulting from such negligence? In the opinion in Boldt v. Pa. R. R. Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385, the court said:

"At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment, or risks caused by the master's negligence which are obvious or fully known and appreciated by him."

Several cases are cited in the opinion, which may be referred to. We think the appellee's evidence as to the happening of the accident in this case justified and required the submission to the jury of the question as to whether or not he had assumed the risk of using the bucket in question. He was presumably a man of ordinary intelligence, and doubtless more, or he would not have been employed as a car and air brake inspector.

It seems clear that the dangers incident to the use of this bucket were obvious, and Sampson's testimony tends strongly to show that they were fully known and apprehended by him. Any person of ordinary intelligence, especially one who had used such a bucket for two weeks, ought to be presumed to know that there was constant danger of injury such as he sustained from the protruding jagged ends of metal. The fact that two or three days before the accident he complained of the dangerous condition of the bucket, asserted that such buckets were bad to go in the cars with, and that "they were dangerous to passengers, let alone to work with," is very significant upon this question. It is

difficult to believe, in view of this admission, that Sampson did not clearly appreciate the fact that the jagged metal was likely to catch upon, lacerate, or tear anything with which it came into contact.

[4] The fact that Sampson complained of the condition of the bucket to the foremen does not, as counsel contends, relieve him from the assumption of risk.

"A servant assumes the ordinary risks and dangers of his employment and the extraordinary risks and dangers which he knows and appreciates. Neither the order of a vice principal to the servant to work in a dangerous place, or in a dangerous way, nor his assurance of the servant's safety, nor the servant's fear of losing his job, will release the servant from his assumption of the risk and danger, where they were readily observable and were known and appreciated by him, unless the vice principal makes a promise to remove them as an inducement for the servant's continuance in the service." Opinion by Sanborn, Judge, in Union Pac. R. Co. v. Marone, 246 Fed. 916, 159 C. C. A. 188.

In this opinion numerous authorities are referred to. See, also, Seaboard Air Line Company v. Horton, supra, in which case the material facts were much like those in the case at bar. There is not in this case, however, any evidence that tends to show that the company or the foreman promised to furnish a new bucket as any inducement for Sampson's continuance in the service.

[5] The next question is whether the defense of assumption of risk on the part of Sampson was sufficiently raised below to be considered here. The second prayer of the plaintiff below, which was granted by the court under objection and exception of the defendant, instructed the jury that as a matter of law the burden of proving plaintiff's contributory negligence was upon defendant, and that, even should the jury find from the evidence that the plaintiff was negligent himself, and thereby contributed to his injury, if they further found that his contributory negligence was slight, and that of the Terminal Company was gross in comparison, their verdict should still be for the plaintiff, but the damages should be diminished in proportion to the amount of the negligence attributable to the plaintiff.

This was objected to on the ground that the testimony showed that the defense of assumption of risk was clearly applicable, and that contributory negligence did not enter into it at all, and that the court could not identify the defense of assumption of risk with that of contributory negligence, and so dispose of the defense of assumption of risk. Inasmuch as the court nowhere in its charge submitted the question of defense of assumption of risk, the granting of the foregoing request of the plaintiff was error. The defendant had a right to have the jury instructed that, if they found that the plaintiff assumed the risk of his employment, there could not be, under the circumstances of this case, a verdict for the plaintiff.

The defendant below presented several requests to charge, one of which somewhat incompletely presented the law as to assumption of risk, all of which were denied, and the denial severally excepted to, on the ground that the defense of assumption of risk was available in the case. In view, however, of the conclusion already reached, it is unnecessary to consider them.

The judgment below is reversed, with costs, and a new trial ordered.