## PORT ANGELES WESTERN R. CO. v. TOMAS.

Circuit Court of Appeals, Ninth Circuit.
November 25, 1929.

No. 5871.

Wilbur, Circuit Judge, dissenting.

Ira Bronson, H. B. Jones, and R. E. Bronson, all of Seattle, Wash., and Lewis & Church, of Port Angeles, Wash., for appellant.

John M. Boyle, Jr., and Edwin H. Flick, both of Seattle, Wash., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and LOUDERBACK, District Judge.

DIETRICH, Circuit Judge. In the forenoon of November 19, 1927, while working as a section hand in the repair of appellant's railroad track, appellee was caught underneath a falling tree and suffered severe injury. Appellant was engaged as a common carrier in interstate commerce, and hence in bringing this suit to recover damages appellee invoked the provisions of the Federal Employers' Liability Act (45 USCA §§ 51–59). The verdict was in his favor, and from an appropriate judgment thereon the defendant prosecutes this appeal.

The record discloses no objections or exceptions respecting the introduction of evidence, or the instructions given or refused, other than the refusal to grant appellant's request that a verdict be directed in its favor. Hence the only question for our consideration is whether the evidence is such that as a matter of law plaintiff is not entitled to recover. Appellant asserts two propositions: First, that the evidence was insufficient to establish any negligence upon its part; and, second, that appellee assumed the risk. It would seem that the positions now taken by the parties are measurably inconsistent with certain allegations of their pleadings, but, inasmuch as upon both sides the cause was tried without objection to the evidence received and appellant's motion for a directed verdict challenged only the sufficiency of the evidence, our consideration may properly be confined to the issues made by the evidence.

The accident occurred a few miles out from Piedmont in the state of Washington. There was testimony for the appellant tending to show, and for the purposes of decision we shall assume, that its right of way was 100 feet wide, 50 feet on each side of the center of its railroad track; that for the most part it extended through a timbered country and had been cleared; that at the point in question the roadbed was on a hillside, resulting in a cut on one side and a fill on the other; that the tree which fell stood between 75 and 100 feet from the track, upon the uphill side off the right of way, was approximately 18 inches in diameter and 100 feet high, and was surrounded by undergrowth and smaller trees. Upon some of these points the testimony is indefinite or conflicting, and with propriety the jurors could have found less favorably to appellant, but they are not deemed of vital importance, and hence we assume the facts to have been approximately as stated.

Passing to the more material features of the case, there was substantial evidence tending to show that during the night preceding the accident a very heavy wind had prevailed, and during the morning of the 19th, up to

the time of the accident, it continued, although possibly somewhat abated, with intermittent gusts or "puffs" of great violence. Mingled with it was rain, and under its impact the tops of the trees swayed to such an extent as to engender in the minds of the workmen a feeling of uneasiness, if not of fear. There was also credible testimony tending strongly to show that some of the men in the gang expressed their concern to the foreman and suggested it would be better to go back to camp awhile, or at least to work at some other part of the road where there was less peril; that in substance the foreman assured them there was no danger, that the company insisted that repairs be made at that point without delay, and that those who were unwilling to go ahead with the work would be discharged. True, as a witness for appellant, the foreman put in a denial to a part of this testimony and sought to qualify other parts. But upon a motion for a directed verdict the court was bound to accept the testimony most favorable to plaintiff; and, besides, the testimony of the foreman was not highly convincing. In one breath he said: "I knew the men were going to work (that morning) under the trees, but I didn't think there was any danger." "I did not feel a bit uneasy at all about it." And then: "As we came along to work that morning we found one tree along the track that blew down the night before and we took that down." He admitted that the trees were swaying violently at the point where the accident occurred, and testified that he called that fact to the men's attention and said to them, "When these puffs come, boys, kind of watch out." The tree in question apparently was taller than all the others in the immediate vicinity and fell across the track as a result of being uprooted. To what extent, if at all, the process of uprooting had progressed during the gale of the night before is not shown. In so far as appears, no investigation of its condition was made, and no watch was set to the end that the men could be warned instantly in case there were indications that it was going to fall.

Upon the whole, we are of the opinion that the evidence was such as to require submission to the jury of the question whether appellant discharged its obligation to exercise reasonable care in seeing to it that the place where appellee was required to work was not attended with unnecessary peril. Liberty Bell Gold M. Co. v. Smuggler-Union M. Co. (C. C. A.) 203 F. 975; McIntyre v. Modern Woodmen (C. C. A.) 200 F. 1; Nor-folk Ry. Co. v. Hauser (C. C. A.) 211 F. 567; Shank v. Great Shoshone, etc., Co. (C. C. A.) 205 F. 833; Sandidge v. Atchison, etc., Ry. Co. (C. C. A.) 193 F. 867; Texas, etc., Ry. Co. v. Cox, 145 U. S. 606, 12 S. Ct. 905, 36 L. Ed. 829; Kreigh v. Westinghouse, etc., Co., 214 U. S. 249, 29 S. Ct. 619, 53 L. Ed. 984.

Nor do we think that it can be said as a matter of law that appellee assumed the risk. Under all the circumstances of the case, the question was one for the jury and, presumably, in its instructions the court below correctly advised the jury of the applicable principles of law. Disquieted, undoubtedly, appellee was, but clearly we think it was not unnatural for him to yield to the assurances of the foreman. Considering the latter's rank, appellee might reasonably assume that he had had a wider experience and was in the exercise of a more intelligent judgment than his subordinates, and would not threaten them with discharge unless he felt confident that their expressed concern was unfounded and for them to insist on not proceeding with the work in the emergency would be unreasonable. Generally speaking, the defense of assumption of risk can be successfully invoked only in a case where the conditions constituting the source of peril are fully known to and appreciated by the workmen. Harder & Hafer Coal Mining Co. v. Schmidt (C. C. A.) 104 F. 282; Sandidge v. Atchison, etc., Ry. Co. (C. C. A.) 193 F. 867, 878.

In Burkard v. A. Leschen, etc., Rope Co., 217 Mo. 466, 117 S. W. 35, 40, the court said: "Where a servant is apprehensive that the place in which he is required to work is dangerous and unsafe, but relies, * * * upon the assurance of the foreman in charge of the work and in charge of the servant that it is safe, and the servant is injured without any negligence upon his own part, the master is liable."

And in Postal Telegraph Co. v. Grantham, 187 F. 52, 56, the Circuit Court of Appeals of the Fourth Circuit said: "It appears from the evidence that this was a case of emergency where the defendant was exceedingly anxious to have the telegraph poles in question removed promptly in order that the railroad company might be permitted to construct a coal chute; * * * It is contended that the plaintiff, owing to the conversation which he had with the district foreman before he undertook to do this work, was led to believe that he was safe in attempting to do the work in the manner directed. Under such circumstances, it was but natural for the

212

plaintiff to obey the orders of his superior when he knew that his refusal to comply with such orders would result in his dismissal. * * * These continued assurances on the part of the defendant, together with the peculiar and urgent circumstances attending the undertaking of the work, were sufficient to induce the plaintiff to believe that he was safe in attempting to do the work in the manner directed."

In Withiam v. Tenino Stone Quarries, 48 Wash. 127, 92 P. 900, 901, the Supreme Court of Washington, after quoting the rule from text-writers and judicial decisions, said: "The only question in this case, therefore, is: Was the danger so apparent and imminent that a man of average prudence and intelligence would have refused to obey the master's command?" See also Prink v. Longview, etc., Ry. Co. (Wash.) 279 P. 1115; Washington Terminal Company v. Sampson, 53 App. D. C. 179, 289 F. 577.

Of the cases cited by appellant, Hallstein v. Penn. R. Co. (C. C. A.) 30 F.(2d) 594, 596, is clearly distinguishable, in that there the danger "connected with the work was obvious and fully appreciated by the plaintiff, * * * nor were representations of the lack of danger, upon which he might have been justified in relying, made to allay his fears." Delaware, L. & W. Ry. Co. v. Koske (Feb. 18, 1929) 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578, is without analogy in point of fact, and makes no new application of the general rule. And this also may be said of Seaboard, etc., Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Boldt v. Pa. R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970. And Atl. Coast Line R. Co. v. Davis (March 1, 1929) 279 U. S. 34, 49 S. Ct. 210, 73 L. Ed. 601, can hardly be said to be even remotely in point. In Washington Terminal Co. v. Sampson, 53 App. D. C. 179, 289 F. 577, 580, apparently the facts bear little analogy to the record here, and the court held only that defendant was entitled to have the question of assumption of risk submitted to the jury.

Perhaps with the greatest confidence appellant relies upon the following excerpt from the opinion of Judge Sanborn in Union Pacific Railway Co. v. Marone (C. C. A.) 246 F. 916, 924: "A servant assumes the ordinary risks and dangers of his employment and the extraordinary risks and dangers which he knows and appreciates. Neither the order of a vice principal to the servant to work in a dangerous place, or in a danger-

ous way, nor his assurance of the servant's safety, nor the servant's fear of losing his job, will release the servant from his assumption of the risk and danger where they were readily observable and were known and appreciated by him, unless the vice principal makes a promise to remove them as an inducement for the servant's continuance in the service." But even if it be conceded that this statement of the law is, in the absence of special circumstances, correct, it is not conclusive of the point here in issue, for it does not conclusively appear that the "risk and danger" to appellee "were readily observable and were known and appreciated by him." Under the circumstances of the case, and even under the testimony of the foreman, the question whether they were "readily observable and were known and appreciated by" him was one for the jury. It is one thing for a servant to continue at work in a place known and believed by him to be dangerous, notwithstanding assurances to the contrary by his superior, but quite another for him to continue where independently he would have some fear, but, in fact, reasonably yields his judgment to that of his superior and consequently proceeds upon the assumption that no peril really exists.

Affirmed.

WILBUR, Circuit Judge, dissents.