[Civ. No. 6278. Second Appellate District, Division Two.—April 23, 1930.]

THOMAS R. DICK, Respondent, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

E. W. Camp, M. W. Reed, Robert Brennan and E. T. Lucey for Appellant.

E. B. Drake for Respondent.

THOMPSON (IRA F.), J.—The defendant appeals from a judgment rendered in favor of the plaintiff in an action brought for the recovery of damages for personal injuries. And inasmuch as it is earnestly insisted that the evidence is insufficient to support the verdict of the jury we shall first set down that portion of the testimony which

justifies the jury's finding. The respondent was a fireman on a freight train and in the employ of appellant on a run between Winslow, Arizona, and Gallup, New Mexico. On the night of the accident, September 17, 1925, the train, in charge of one D. M. Birney as engineer and respondent as fireman, was scheduled to stop at Houck, Arizona, for the purpose of taking on fuel coal. As the train approached the coal-bins, which are located above the level of the tender and from which coal is loaded by gravity, after the fireman has pulled down an iron apron long enough to extend from the bin to the tender, it was traveling an upgrade of about seven-tenths of one per cent, or about thirty-seven feet to the mile. There was in effect at the time a rule of the appellant that when coal was to be taken the engine should be uncoupled and spotted at the bin. On this occasion, according to the testimony of the respondent, the engineer refused his request to uncouple the engine, saying that they were in a hurry to meet, at a certain other siding, a passenger train. Accordingly, with sixty freight-cars attached, they drifted by the bins four or five car-lengths and then back up to the proper place. During the time the train was being reversed the respondent was riding on top of the cab in view of the engineer, although he could not see the latter. According to respondent's testimony he stood there for ten or twelve seconds after the train stopped and then the engineer told him that the "first pocket there was all right, to get down and get to work." Whereupon respondent stepped down on "the tool-box just behind the cab." After four or five tons of coal had run into the tender the engineer told him to get out of there, that he was going to spread it with the engine, but, to quote the witness, he "didn't have time—caught me before I could get out." The respondent's right leg was so badly crushed as to necessitate an amputation, near the hip, rendering him a permanent cripple. It is only just to say that evidence produced by the defendant was in conflict with much of that we have already recited, but it is sufficient for our purposes to set down that which the jury evidently accepted as the true version of the occurrence. It is manifest from the statement that there is ample support therein for their verdict and their belief that the engineer negligently and carelessly and without

sufficient warning moved the train while the respondent was in a perilous position. The running out of the slack of the train insistently pressed upon us by appellant as a reason for the accident does not accord with the respondent's statements that he waited some time after the train had stopped before descending from the cab, and that he had loaded four or five tons before the train was again moved. The jury having found the fact upon substantial evidence, we are bound thereby.

The next question for consideration is whether the court properly instructed the jury upon the subject of assumption of risk. In this connection it is to be noted that the allegations of the acts negligently done were to the effect that the engineer in charge of the engine negligently failed to hold the train standing still and negligently permitted it to move during the time of loading the tender with coal. It is further to be observed that the defendant was engaged in interstate commerce at the time of the accident and therefore the provisions of the act of Congress approved April 27, 1908 (35 Stats. at Large, 65, chap. 149; Comp. Stats. 1916, sec. 8657 [45 U. S. C. A., sec. 51, etc.]), and acts amendatory thereof, commonly known as the Federal Employers' Liability Act, are applicable in determining the liability of the carrier in this instance. It cannot be doubted that according to the ordinary rule or at common law a servant assumes all risks naturally and obviously incident to the physical situation of his employment, plus such superadded dangers as are caused by the employer's negligence which are obvious or fully known and appreciated by the employee. (*Boldt* v. *Pennsylvania R. Co.*, 245 U. S. 441 [62 L. Ed. 385, 35 Sup. Ct. Rep. 138]); *Morgan* v. *Robinson Co.*, 157 Cal. 348 [107 Pac. 695].) Nor has the statute enlarged the defense in any particular. Rather it has eliminated the defense in certain cases of which this is not one, indicating, as has been declared, a legislative intent that, in all other instances, such assumption shall have its former effect. (*Seaboard A. L. R. Co.* v. *Horton*, 233 U. S. 492 [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635].) Upon turning to the instruction we find that the court instructed the jury that the respondent not only assumed the risks and dangers incident to his work but also extraordinary risks "caused

366

by the employer's negligence which are fully known and appreciated by him or which are so obvious that an ordinarily careful and prudent person would, under the circumstances, have observed and appreciated them.'' In fact, from a reading of not less than six instructions pertinent thereto we are of the opinion that the jury was very fully instructed upon the law in this particular and that appellant can have no possible complaint. Appellant's counsel suggests that assumption of risk in this case is a question of law and not of fact. It is a sufficient answer to this assertion to say that we could only apply the doctrine here as a matter of law by assuming a state of facts contrary to that which the jury evidently believed to be the true circumstances.

The arguments already reviewed are put in other forms by the appellant, but we deem further discussion unnecessary.

Judgment affirmed.

Craig, Acting P. J., concurred.

Owing to the absence of Works, P. J., he did not participate in this opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 22, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 19, 1930.