## NORTHWESTERN PAC. R. CO. v. FIEDLER.*
### No. 6322.

Circuit Court of Appeals, Ninth Circuit.
Sept. 14, 1931.

Orrick, Palmer & Dahlquist, of San Francisco, Cal., for appellant.

Thomas F. McCue and Clifton Hildebrand, both of San Francisco, Cal., for appellee.

*Rehearing denied November 23, 1931.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This was an action brought in the United States District Court for the Northern District of California, Southern Division, under the Federal Employers' Liability Act (45 USCA §§ 51–59) to recover damages for injuries alleged to have been received by plaintiff, appellee, while he was employed by defendant, appellant, in interstate commerce.

The complaint, inter alia, alleges:

"That on or about the 21st day of November, 1929, while the plaintiff was regularly employed by the defendant as a bridge and tunnel carpenter in reconstructing the portal at the entrance of Pieta tunnel, a tunnel situated upon the defendant's line of road about one-half mile south of the station of Pieta, California, plaintiff was ordered by the defendant's foreman, Henry Pagels, who was in charge of the work, to go upon said portal and saw planks or boards on the top of said portal and that while he was so engaged two other employees of the defendant, under the direction and order of said foreman, Henry Pagels, removed one of the standards or support of said portal; that the removal of said standard or support caused the planking on said portal to become weakened and while the plaintiff was standing upon the planking, said planking suddenly broke and caused the plaintiff to be thrown with great force and violence to the right of way, a distance of about nineteen (19) feet, which caused the injuries to plaintiff as hereinafter alleged; that said injuries were the direct and proximate result of the negligence and carelessness of the defendant, through its foreman, Henry Pagels, engaged upon said work, in directing and ordering the other employees to remove the standard or support of said portal upon which plaintiff was working at said time, and that notwithstanding said dangerous and weakened condition of said portal, the said foreman, Henry Pagels, ordered and directed plaintiff to continue his work; that at said time the plaintiff was not acquainted with the condition of the structure upon which he was working on said portal and that in going upon the same to perform the carpenter work, as hereinbefore alleged, he relied solely upon the order and direction of said foreman, Henry Pagels, and that the defendant had furnished a safe place upon which the plaintiff was to work; and this plaintiff alleges the fact to be that said portal was wholly unsafe and in a dangerous condition by reason of the negligence of removing the support and standard therefrom.

"That the tunnel hereinbefore described is a tunnel regularly used by the defendant through which it ran its trains engaged in interstate commerce, and that at the time of the injuries hereinafter set forth the defendant was using said tunnel in connection with the operation of its trains engaged in interstate commerce."

The defendant's answer contains a general denial of the allegations of the complaint and also separate defenses of contributory negligence on the part and assumption of risk by the plaintiff.

The statement of facts as set forth in the appellant's brief agreed to by appellee with the exception of a few alleged errors not necessary to be considered by us is as follows:

"Plaintiff, while in the employ of defendant Northwestern Pacific Railroad Company as a bridge and tunnel carpenter, was injured on November 21, 1929, while engaged in enlarging one of the tunnels of the railroad line of the defendant. It is admitted that he was engaged in interstate commerce and this action to recover damages for the injuries sustained at that time is brought under the provisions of the Federal Employers' Liability Act.

"Plaintiff was an experienced bridge and tunnel carpenter, having been engaged in that line of work for some sixteen years prior to the accident. He was a member of a gang working on the tunnel in question under the orders of its foreman, Edward Pagels. The gang was working on both ends of the tunnel at once, and Fiedler was a member of that portion of the gang working in and about the north portal of the tunnel. The work to be done consisted in enlarging the tunnel and in replacing the wooden tunnel lining with new timbers to the enlarged size of the tunnel. The tunnel lining consisted of so-called 'sets,' comprised of two large upright posts or timbers at the side of the tunnel and an arch in a gothic shape at the top. These sets were placed at intervals of from three to four feet apart throughout the tunnel and across the top and sides of the sets were laid boards and smaller wooden timbers which prevented the earth and other materials in the inside of the tunnel from falling in upon the tracks. These smaller timbers were called 'lagging' and were not nailed to the sets, but were held in place by the

earth and material pressing upon them. At each portal of the tunnel there was what was called the 'portal' or 'square' set. The portal set consisted of four heavy timber uprights on each side of the tunnel set close together, and four heavy timbers stretched across the top of the uprights. On the top of these cross timbers on the portal set there was nailed a set of planks three inches thick and some twelve or fourteen inches wide of double thickness, which planks ran lengthwise with the tunnel. From the inside edge of the portal set to the first set there was a distance of only a few inches and between that first tunnel set and the next or second set there was a space of about three feet. The hill above the north portal of the tunnel had been dug away so that the edge of the hill was almost directly above the second set to the south from the portal set and, therefore, at the time of the accident the entire portal set and the second set were out in broad daylight.

"The accident happened shortly after noon on November 21, 1929. In the morning before lunch the first set to the south of the portal set had been removed, and all the lagging between the first and second set had fallen in. The double set of planks which were nailed on top of the portal set and which ran lengthwise with the tunnel were about eight feet long and extended from the portal set about four or four and one-half feet to the south of the portal set and the ends of said planks had originally rested on the second set to the south of the portal. Shortly after lunch the foreman ordered plaintiff to go up on top of the portal set and saw off that portion of these planks which extended to the south of the south edge of the portal set. The testimony of defendant's witnesses is to the effect that both the first and second tunnel sets south of the portal had been removed prior to the accident and that plaintiff himself helped to remove them. Plaintiff denied that the second set had been removed before he commenced sawing and it is his theory that the men removed the second set while he was in the act of sawing the planks. The portal set was some four feet in width and there was plenty of room thereon for plaintiff to stand while sawing off the planks. Plaintiff had sawed two or three of the planks through when in some way he placed his weight on the projecting planks, and as they were old and rotten, they broke and he fell to the bottom of the tunnel and sustained the injuries complained of."

Plaintiff claims "that the accident was caused by the negligence of the defendant and the defendant contends that there was no negligence on its part and that the risk of the breaking planks and subsequent fall was a risk normally and necessarily incident to plaintiff's occupation and employment which he assumed and he is, therefore, barred from recovery by the provisions of the statute." It is the defendant's contention "that the lower court erred in denying defendant's motion for a directed verdict in its favor predicated on the ground that there was no evidence of negligence on the part of defendant and that plaintiff assumed the risk of the planks breaking at the time and place of the accident."

At the conclusion of plaintiff's evidence in chief and again at the conclusion of all of the evidence in the case, defendant moved for a directed verdict in its favor on the ground that there was no evidence whatsoever of any negligence on the part of the defendant to submit to the jury; and, secondly, "that the plaintiff's testimony and the whole testimony in the case shows as a matter of law that he assumed the risk of his employment in the place and with the instrument of defendant at that time and as a result he can not under the provision of the Federal Employers' Liability Act, recover."

This motion was by the court denied and such denial is assigned as error. If the court did not err in this respect, there is no error in the record.

To determine whether or not the court was warranted in submitting the case to the jury, the testimony of the plaintiff must be accepted in its most favorable light. Port Angeles Western R. Co. v. Tomas (C. C. A. 9), 36 F.(2d) 210, 211. The testimony of the plaintiff as to the presence of the second set and the probable effect of its removal is accordingly given below in full: "On the date of this accident, Mr. Pagles was the foreman of the gang, and he told me to go up and saw these planks off. He told me that about half an hour before dinner—we had dinner at eleven o'clock. After lunch I went up to complete this sawing. I was sawing right close to the square or portal set. A set is two posts and an arch in a Gothic shape. One set next to the first or portal set, which was underneath the planks I was sawing off, was removed before dinner. This set that was removed was the first set from the portal set. The second set was removed after dinner. I don't know when it was removed, as I didn't see it removed.

I went down to get a cigarette and I heard them working, and Pagles said, 'What are you doing down there? Get up there and saw them off.' I went back and continued to saw them off. They must have taken the second set out when I was up there. It was taken out after I went up to saw. The effect of taking out this set would naturally cause the planks to sag some. The ends of the boards that I was sawing rested upon this second set before it was removed, and the set supported the boards. While I was standing there, I stooped to get the plank, you know, and naturally fell. I got some weight on that one plank and it went down."

It was the duty of the defendant company to furnish the plaintiff with a safe place in which to work, and the jury were justified in finding that the removal of the second set was negligent, in that such removal weakened the planking.

According to his testimony, the plaintiff did not know that the second set had been removed, and therefore he did not assume the risk. The risk was not open or obvious, nor would it have been so to any man of ordinary intelligence. He had been ordered by the foreman to go back to the work, and he did believe that the second set was there. Accordingly, he reached out to take hold of the piece that he had sawed off since he said the foreman told him "to throw the pieces of plank back." He was not aware that there was no support beneath it, and he could not have anticipated the accident. He positively testified that the planks were not all rotten, and this fact might have led him to believe that he was not running a risk when he did the work as he testified. Notwithstanding other testimony to the contrary, the jury evidently accepted his version of the accident.

The general rule as to negligence is that it does not present questions of law, which justify the direction of a verdict, except where all reasonable men must draw the same conclusions from the evidence. New York, N. H. & H. R. Co. v. Pascucci (C. C. A. 1) 46 F.(2d) 969, 972, citing Chicago, St. P. M. & O. Ry. Co. v. Nelson (C. C. A.) 226 F. 708, 711.

As to assumption of risk, the Supreme Court has laid down the following rule: "The burden of proof of the assumption of risk was upon defendant, and unless the evidence tending to show it was clear and from unimpeached witnesses, and free from contradiction, the trial court could not be charged with error in refusing to take the question from the jury." Kanawha & Michigan Railway Company v. Kerse, etc., 239 U. S. 576, 581, 36 S. Ct. 174, 175, 60 L. Ed. 448.

In the Pascucci Case, supra, the First Circuit Court of Appeals said at page 972 of 46 F.(2d): "On the issue of assumption of risk, the burden of proof is on the employer under the Federal Employers' Liability Act; and, unless the evidence undisputedly shows that the employee assumed both the ordinary risks incident to the employment, or the extraordinary risks of which he had notice and appreciated, the question is one for the jury. [Cases cited.]"

A restatement of this principle is to be found in Chicago, Rock Island & Pacific Railway Company et al. v. Ward, 252 U. S. 18, 21, 22, 40 S. Ct. 275, 276, 64 L. Ed. 430: "As to the nature of the risk assumed by an employee in actions brought under the Employers' Liability Act, we took occasion to say in Chesapeake & Ohio Ry. Co. v. De Atley, 241 U. S. 310, 315, 36 S. Ct. 564, 566, 60 L. Ed. 1016: 'According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them.'"

See, also, Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 68, 24 S. Ct. 24, 48 L. Ed. 96, and Davis v. Hynde (C. C. A. 5) 4 F.(2d) 656, 657, and the cases there cited.

We think there was no error in submitting the case to the jury.

Judgment affirmed, with costs.

WILBUR, Circuit Judge, concurs.