AUGUSTUS J. BUFFINTON, Administrator, etc., of EARL A. BUFFIN-TON, Deceased, Appellant, *v.* BOSTON AND MAINE RAILROAD, Respondent.

Third Department, January 17, 1928.

Railroads — injuries to employees — action under Federal Employers' Liability Act to recover for death of plaintiff's intestate — intestate was employed to clean fire boxes of engines — inside track was three feet nine inches from concrete wall — space between track and concrete wall was not generally used for passage — intestate was walking along path between said wall and track when engine passing slowly over track killed him — air at time was foggy, due to frost and to steam from engine and ash pit — headlight on engine was bright and whistle was blown and bell rung — negligence not shown — intestate assumed risk.

The plaintiff's intestate was employed at the time of his death by the defendant to clean ashes from engines and had been so employed for several months. The engines were cleaned on two tracks which were over an ash pit. The southerly rail of the southerly track, which may be called the inside track, was three feet and nine inches from a concrete wall that was used in the operation of a crane. The space between the inside track and the wall was not generally used by employees, although occasionally the employees did walk on top of the wall. The only use made of the path, which was obviously dangerous, in view of the fact that the engines had an overhang of approximately three feet, was occasionally by hostlers, who approached their engines along the path, and the path was sometimes used for the purpose of cleaning snow and ashes therefrom. On the opposite side of the two tracks there was a broad path running the entire length of the ash pit, which was used by employees in passing from one end of the ash pit to the other. Shortly after midnight on February 8, 1924, at a time when the weather was very cold, the intestate started to walk along the narrow inside path for the purpose of finding a hostler to move an engine on which he was working. At about that time the hostler was moving an engine onto the inside track, but before the movement started, which was at the rate of three or four miles an hour, the hostler turned on the light, blew the whistle and rang the bell which continued to ring. The air was foggy, due to frost and to the steam from engines standing over the ash pit, and from steam rising from the ashes which had been washed into the pit. The intestate was killed. No one saw the accident and it was not known that the intestate had been injured until after the engine had passed. His body was found in the path along the wall about midway between the east and west ends of the pit.

The evidence fails to show any negligence on the part of the hostler who was moving the engine, nor is there any likelihood of any such proof upon another trial.

The plaintiff, who had been an employee of the defendant in the same work for several months, and who knew of the obvious danger in using the path for the purpose of passage, assumed the risk of being injured, even though it might be urged that the defendant should not have maintained the concrete wall so near the inside track.

DAVIS, J., dissents, with memorandum.

APPEAL by the plaintiff from an order and a judgment of the Supreme Court, entered in the office of the clerk of the county of Schenectady on the 3d day of February, 1927.

*McMullen & Ward* [*J. J. McMullen* of counsel], for the appellant.

*Jarvis P. O'Brien,* for the respondent.

HINMAN, J.   Earl A. Buffinton, an employee of the Boston and Maine Railroad, was injured shortly after midnight on February 8, 1924, at his employer's railroad yards at Mechanicville, N. Y., by being caught between an engine and a concrete wall which was located along the edge of the ash pit and separated from it by a narrow space along which he was walking.   He died a few days later as a result of his injuries.   This action was brought by his administrator, under the Federal Employers' Liability Act,* based on alleged negligence of the railroad, in failing to furnish a safe place to work, in maintaining the wall so near the track, in failing to employ competent men to carry on the work of the yard, in failing to warn intestate of the approach of the engine and in failing to provide and enforce proper rules for the operation of engines in the yard.   The railroad denied such charges of negligence and charged further that the accident was due solely to the negligence of the deceased and that he had continued in the employment with full knowledge of any dangers and risks incident thereto and assumed the risk.   The case was submitted to the jury on the issue that the plaintiff could have a verdict only if it appeared that there was some negligence on the part of the operator of the engine; and the court charged that negligence could not be predicated upon the location of the wall so near the track, the plaintiff having assumed any risk by continuing in the employment with knowledge of the danger.   The plaintiff took no exception to the charge.   The court reserved decision on motions for nonsuit and dismissal of the complaint made at the close of the plaintiff's case and at the conclusion of the testimony and upon the return of a verdict in favor of the plaintiff the court of its own motion entered a motion to set aside the verdict and reserved decision thereon also.   Later in the term the court signed an order granting " defendant's motions " on the ground that " the evidence fails to show that the defendant was negligent."   Judgment was entered thereon dismissing the complaint and for costs to the defendant.   The appellant makes no complaint in this court as to any ambiguity in the form of the order and no attempt was made to clarify it.   Quite apparently it was the intention of the court to

---

* See 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143; now U. S. Code, tit. 45, § 51 *et seq.*— [REP.

grant the motions for dismissal of the complaint as provided in the judgment and such a disposition was amply justified on the law and facts of the case.

The wall, known as a Gantry wall, was between three and four feet high, made of cement and boxed over with a wooden frame, the top of which consisted of a series of wooden doors which covered an electrified rail for power to move a so-called Gantry crane, used to load cinders from the ash pit and to unload coal to the coal pocket, which was about eighty feet west of the ash pit. The crane moved along the wall from the ash pit to the coal pocket on tracks located on the opposite side of the wall. The doors on top of the wall were opened when the crane was operated and otherwise were supposed to be closed at which time it was customary for workmen to walk along the top of the wall when necessary.

The ash pit, where engine fires were cleaned and the ash pans were washed out, extended along the north side of the Gantry wall. The pit was one hundred and seventy feet long and seven or eight feet deep. There were two tracks running easterly and westerly over the ash pit. The rails were laid on concrete piers and the space beneath these two sets of tracks and between them constituted the ash pit. The southerly rail of the southerly track, which we may call the inside track, was about three feet nine inches from the Gantry wall. This space was solid ground covered with cinders, but because of the overhang of engines, in some cases as much as three feet from the rail, the clearance between engine and wall made it obviously unsafe if not impossible to use this space as a path. To the north of the northerly ash pit track, which we will call the outside track, there was a path about twelve feet wide, unobstructed by tracks, upon which men could walk and which it was customary to use in going from one end of the ash pit to the other. At the ash pit the fires of engines were first cleaned and then the ash pans were washed out with a hose. There was a water plug with hose connection located about five feet west of the west end of the pit and midway between the inside and outside ash pit tracks. Also there were two such water plugs along the path north of the outside track, but there was no such plug or hose connection in the space between the wall and the inside track. The practice was to use the outside track for cleaning engines unless that track was full, in which event the inside track was used. That frequently happened and did on the night in question. The inside track was also used to move engines in and out of the terminal, if necessary. It was likely to be used at any time of the day or night. Road engineers did not place their engines on the pit for conditioning but stopped them east of the east end of the pit where

Third Department, January, 1928.                    [Vol. 222

the engines were turned over to a hostler who moved them on the pit for the cleaning men and later moved them off to get coal, water and sand and to place them in the roundhouse or back into service.    When the inside track was used for cleaning ash pans, the engine was moved to the west end of the pit where the water plug and hose could be used.    If an additional engine was moved on the inside track, when its turn came to be cleaned it, too, would be moved up to the west end of the pit.    It could only be cleaned where there was a hose to wash out the ashes.    If an additional engine was thus left midway of the ash pit on the inside track, a hostler might walk along this path next to the Gantry wall to get to the engine to move it up into position for washing or he could walk along the top of the Gantry wall.    There were also times when men went in on that path to shovel snow or to push ashes down into the pit when that portion of the pit under the inside track was full.    Otherwise there was no occasion for any employees to walk or be on that path or space except at the extreme west end where an ash pan cleaner might, if he desired, use it while cleaning a standing engine.    It was unsafe to use it as a path.    That was an obvious fact and so testified to by fellow-employees who were plaintiff's witnesses and who stated also that they had not seen it used by workmen except for the purposes above stated.    Such was the layout and practice during the five months or so that plaintiff's intestate worked as a cleaner at the pit and it had remained unchanged for many years before.    In 1920 a larger type of engine was brought into use.    There were twenty of them and the engine which injured plaintiff's intestate was one of that type.    Being larger the clearance between it and the wall was lessened to ten inches at the engine's widest part, but that type of engine had been regularly cleaned on either track from the beginning and during all the time the deceased had worked there.    Moreover there were even wider engines in the service which had been cleaned on the inside track.

The accident happened in very cold weather, shortly after midnight of February 8, 1924.    The air in and about the pit was very foggy, as was usual on such cold nights — full of steam both from four engines standing on the outside track and from the hot ashes which were being washed into the pit.    Buffinton, the plaintiff's intestate, was working with a helper named Herrington at the west end of the ash pit.    They were about to wash out the pan on the front engine on the outside track.    There were other engines behind it.    They had just been pushed up toward the west end. The front one had been pushed too far beyond the pit, so that they could not wash the pan with the hose located at the west end of the

pit. They had to have it pulled back toward the east. Someone had to go to tell a hostler to move it and Buffinton volunteered to get the hostler. Herrington stood there and waited. Buffinton, instead of going down the broad path to the north of the pit, started down the narrow space along the Gantry wall. Herrington testifies that it was a very cold night and frost and steam were in the air. As Buffinton went down, he watched him. Buffinton got half way down the pit which was 170 feet long. Herrington noticed that the headlight of an engine standing somewhere toward the east end of the pit was bright. As Herrington looked at the light in the fog, it seemed to move and not being quite sure he looked steadily at it and then could see it was moving. As he watched he looked to see where Buffinton was and Buffinton was then going into the fog or steam that was coming up around the moving engine. Herrington was unaware of an accident until he heard some groaning and heard another employee call to the hostler that a man had been hurt. Buffinton was found in the space along the wall about half way or more toward the east end of the pit.

The hostler who moved the engine testified that he started it about fifteen feet east of the east end of the pit. The outside track was full and he moved it on the inside track and proceeded to the west end of the pit for cleaning. Before starting he turned on the headlight, blew the whistle and started the bell ringing, which continued to ring. This is undisputed and the hostler was plaintiff's own witness. It was also confirmed by other testimony. He was alone in the cab and occupied the engineer's station at the right of the cab. The window in front of him was open but the boiler of the engine cut off some of his view to the left and the air was so foggy or filled with steam around the pit that he could not see the track and wall ahead of him that night. He kept looking ahead all the way to the west end and moved the engine slowly at about three or four miles an hour. He stopped it at the west end of the pit and did not know of the accident until he stopped, when he heard groans and someone called to him that a man was hurt. He went back and found Buffinton in the space along the wall about fifteen feet back of the engine which was ninety feet long. The witnesses all agree that the fog or steam around the pit interfered with seeing. Buffinton had no duty which called him to the place where he was struck and the hostler had no reason to expect that any employee would be walking or standing there. No snow was being shoveled nor ashes pushed down into the pit along this inside track at the time and the only place where he could reasonably expect employees to be would be at the west end of the pit.

He was giving ample warning of his approach. We fail to see any evidence of negligence on the part of the hostler, nor the likelihood of any such proof upon another trial. Almost all of the witnesses were called by the plaintiff and there was no dispute as to the essential facts above narrated.

There is no evidence upon which to predicate negligence upon any of the other grounds alleged in the complaint and plaintiff did not request submission of the case to the jury on any such ground. The risk of the use of the narrow space along the wall as a path by Buffinton in the manner and circumstances involved was an obvious risk assumed by him even if it could be urged that the defendant ought not to have maintained the Gantry wall so near the inside track when using such large engines. The danger had existed during all the time he was working there. It was an obvious danger which he must be assumed to have known and appreciated. He, therefore, assumed the risk. (*Seaboard Air Line* v. *Horton,* 233 U. S. 492; *Southern Pacific Company* v. *Berkshire,* 254 id. 415; *Drake* v. *Auburn City R. Company,* 173 N. Y. 466.) The court below so charged the jury and without exception.

The judgment and order should be affirmed, with costs.

COCHRANE, P. J., and VAN KIRK, J., concur; McCANN, J., not voting; DAVIS, J., dissents and votes for reversal on the grounds that the practice does not warrant the dismissal of the complaint on reserved motions after the taking of a general verdict (*Bail* v. *N. Y., N. H. & H. R. R. Co.,* 201 N. Y. 355; *Blyth* v. *Quinby & Co.,* 148 App. Div. 871); and further, that a question of fact was presented as to whether the engineer in moving the engine forward where his view was obscured exercised reasonable vigilance and care at a place where he had reason to apprehend men would be engaged in their work.

Judgment and order affirmed, with costs.