## No. 13,255.

DENVER AND SALT LAKE RAILWAY COMPANY v. BEDARD.
(36 P. [2d] 770)

Decided July 2, 1934. Rehearing denied October 1, 1934.

Messrs. SMITH, BROCK, AKOLT & CAMPBELL, Mr. J. H. SHEPHERD for plaintiff in error.

Mr. FRANK C. MYERS, Mr. JOHN S. FINE, Mr. SAM YOELIN, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as the company and defendant in error as plaintiff.

Plaintiff sued the company for $50,000 damages which he alleged he sustained in a collision between a railway motor car on which, as the company's section foreman, he was riding, and the company's work train. The action was brought under the Federal Employers' Liability Act. A jury awarded plaintiff over $17,000, and to review the judgment thereupon entered the company prosecutes this writ. Of the 24 assignments we confine ourselves to the first, which is that the court erred in overruling the company's motion for a directed verdict, presented at the close of all the evidence, and the last, which is that the verdict is not supported by the evidence and is contrary to the law. These two we consider together. That the contentions made under them, and our conclusions thereon, may be understood, a brief statement of admitted facts, and instructions 28 and 31 given by the court, are essential.

On the company's railway is a stretch of road approximately six miles long running from Egeria on the west

to Cinder Pit on the east. Two and four-tenths miles west of the latter is a bridge, which we designate as A, on which the accident occurred. A short distance west of it is another which we designate as B. Plaintiff was section foreman at Egeria, his section extending from that point to a short distance east of bridge A. It includes what is known as Egeria canon, through which the road has 25 curves and three tunnels. Just east of bridge A is tunnel 52, and just west of it is tunnel 53. The portals of these tunnels facing bridge A are 850 feet apart. On the morning of August 12, the work train was at Cinder Pit, charged with the duty of loading dirt in dump cars there and hauling it to bridge B and dumping it. In so doing it ran from east to west through tunnel 52 and crossed bridge A. At 6:45 that morning an order was issued to the work train to work between Cinder Pit and Egeria between 7:01 a. m. and 5:01 p. m. The order was given by telephone and plaintiff, pursuant to his duty, heard and understood it. The work train consisted of a locomotive and 12 dump cars. It was pushed westward so that the locomotive was on the east end of it. It began switching at Cinder Pit at 6:55 a. m. so that cars might be placed and workmen begin labor at 7:00. This was accomplished by about 7:08 and the train then moved westward at approximately 12 miles per hour with the conductor and one brakeman sitting on the west end of the west, or first, car. This work had been going on for some time and the method of operation was well known to plaintiff. Moreover, he had formerly worked at Cinder Pit and had a general knowledge of conditions and operations there. He went to work at Egeria on the morning in question at 7:00 a. m. After about two minutes' preparation he was on his way east with his motor car, a trailer, and four section hands. He made no stops and sent no flagman ahead at any time. After passing tunnel 53, and as he approached the west end of bridge A, he began to slow down his car. As the work train emerged from tunnel 52, and the motor car

came in sight, its emergency brakes were promptly applied. At approximately 7:25 a. m. the collision occurred about the center of bridge A. Plaintiff and two of his workmen jumped. Both the latter were killed. Both plaintiff's legs were broken below the knee. One was amputated in a short time and the other some eighteen months later. A third section hand got out on the bridge cap and was rescued, and the fourth remained on the motor car and escaped injury.

Instruction No. 28 reads: ''The court instructs the jury that the evidence in this case establishes the fact that the accident occurred at approximately 7:25 a. m.; also that under the work orders issued to the crew operating the work train, the crew had a right to move beyond the westerly yard limits of Cinder Pit at any time after, but not before, 7:01 a. m.''

Instruction No. 31 reads: ''The jury is instructed that, regardless of the time consumed in the switching operations at Cinder Pit, and regardless of the time of leaving, if the work train did not arrive at the point of the accident prior to the time that it had a right to be there under its working orders, then and in that event your verdict must be for the defendant.''

█ █ It seems scarcely necessary to say that plaintiff could recover only on proof of the company's negligence. *Seaboard Air Line Ry. Co. v. Horton,* 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062. Also, that the company, in operating its work train, was not obliged to keep a lookout for its foreman. It was his duty to keep out of the way of the train. *Chesapeake & Ohio Ry. Co. v. Nixon,* 271 U. S. 218, 46 Sup. Ct. 495, 70 L. Ed. 914.

█ █ Plaintiff's contention is that, under the order above mentioned, the work train should not have begun its switching operations at Cinder Pit until 7:01, in which event he would have reached his destination before its arrival. But the interpretation of the order was for the court. *Chicago, R. I. & P. Ry. Co. v. Ship,* 174 Fed. 353. Moreover, the order is too plain to require in-

terpretation. It will not bear the construction here contended for by plaintiff. He so admitted in his own testimony, and no objection was made by him to either of said instructions. They were correct and, following them, the jury could not have found for plaintiff. They were tantamount to an instructed verdict for the company and its motion for such a verdict should have been sustained. This record is bare of any evidence of the company's negligence, and distasteful as is the duty devolving upon us, it must be discharged.

The judgment is reversed and the cause remanded with directions to enter judgment for the company.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, and MR. JUSTICE HOLLAND concur.